## HANBERRY *vs.* HANBERRY.

[BILL IN EQUITY BY WIFE FOR DIVORCE ON GROUND OF ABANDONMENT.]

1. *What constitutes abandonment by husband.*—If the wife, having left her husband's abode without adequate cause, makes an unconditional offer in good faith to return to her conjugal duty, before her desertion has continued so long as to constitute a ground of divorce in his favor, it is his duty to receive her back; and his refusal to receive her, under such circumstances, amounts to desertion on his part, after the expiration of three years, and entitles her to a divorce.

2. *Misconduct of wife.*—The indulgence of ill temper, jealousy, and improper language by the wife, cannot, under the most extensive import allowed to the doctrine of recrimination, justify or excuse her desertion by the husband.

3. *Proof of abandonment.*— It being proved, in addition to the fact of abandonment shown by the husband's letters, that his motive in marrying was low and selfish; that he neglected his wife, and removed to another State, leaving her behind, and making no preparations for her to follow him; that she voluntarily followed him, and, after remaining a few months, returned alone to this State; and that she afterwards made an unconditional offer to return to him, which, as shown by his letters, he rejected,—*held*, that the proof of abandonment was sufficient to entitle the wife to a divorce.

4. *Jurisdiction not dependent upon place where cause of divorce occurred.*—The jurisdiction of the courts of this State, to grant a divorce to a party here domiciled, is not dependent upon the place where the alleged ground of divorce occurred.

5. *Domicile of husband and wife.*—It is a settled general rule of law, that the domicile of the wife follows that of the husband; but an exception to this rule is, that the wife must be allowed, for the purpose of obtaining a divorce, to acquire a separate domicile in the State in which she is actually living at the time she is deserted by her husband, even where the desertion consists in his refusal to allow her to return, after having left his abode in another State.

6. *Remandment of cause on reversal.*—Where the chancellor's decree is reversed on error, and the complainant held entitled to a divorce, the cause will nevertheless be remanded, because it is the duty of the register (Code, § 1978) to make out and transmit the record to the speaker of the house of representatives.

APPEAL from the Chancery Court of Bibb.

Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by Mrs. Rebecca J. Hanberry, suing by her next friend, against her husband, Henry R. Hanberry; asking a divorce, on the grounds of adultery and abandonment. A decree *pro confesso*, on proof of publication, was taken against the defendant as a non-resident. On final hearing, the chancellor dismissed the bill, on the ground that the alleged abandonment occurred in South Carolina, where the defendant resided, and therefore the court had no jurisdiction. The decree of the chancellor is now assigned as error.

I. W. GARROTT, for the appellant.

WALKER, J.—As there is no evidence sustaining any of the other charges in complainant's bill than abandonment, we need not consider this in any other light than a suit for divorce upon the ground of abandonment.

The parties were married, in this State, in 1847. In 1819 the defendant went to South Carolina, whither the plaintiff followed him. Some time before March, 1851, she returned to Alabama, leaving him in South Carolina; and she resided with her father, in Bibb county in this State, continuously from that time till the commencement of the suit, in February, 1855. The circumstances under which she left her husband in South Carolina, or the purpose with which she left him, is not manifest from the testimony; and the allegation of

the bill, that she returned to Alabama on a visit to her mother, with her husband's consent, and at his request, is unsupported by testimony.

But, notwithstanding the wife may have left her husband without adequate cause, and come to Alabama, leaving him in South Carolina, it would be his duty to receive her back, upon an offer by her in good faith to return to her conjugal duty, at any time before her desertion had continued so long as to constitute a cause of action for a divorce. Even though the wife has left the husband without cause, yet, if she returns to him, and in good faith makes a sincere offer, without improper qualifications or conditions, to resume conjugal relations, it is his duty to accept her ; and if he refuses, the refusal amounts to desertion, and, after the expiration of the period prescribed in the statute, may become the ground for a divorce.—Bishop on M. & D. §§ 513, 530.

Perhaps the same principle would not extend to cases where the wife's absence has been under such circumstances, and for so long a time, as to entitle the husband to a divorce, for it would probably be incompetent for either party to destroy a subsisting and complete right to a divorce on account of abandonment, by an offer to resume the conjugal relation. This question, not arising in the case, we do not intend to decide.—Fishli v. Fishli, 2 Litt. 337.

It is proved by a letter from the defendant in evidence, that before the 26 March, 1851, (its date,) the complainant had, by letter addressed, from Alabama, to him in South Carolina, proposed to return to him, if he would send his sister from his house, or if he would come to Alabama. These propositions were rejected by the husband, in language bitter and severe ; and the rejection is accompanied with a distinct and emphatic enunciation, that she need never to come back, for he was fully determined never to live with her any more.

This proposition the defendant was not bound to accept, for it was accompanied with qualifications which the complainant had no right to prescribe.

Another letter from the defendant to the complainant, of similar address, and of date two months subsequent to the former, is in evidence. That letter was written in reply to one from the complainant, and acknowledges that the com-

plainant had, in her letter, made an offer to return and live with him, which offer appears to have been unconditional. To show the nature of the complainant's proposition, we make the following extract from that letter to her : " In your last letter, you wrote very different from what you did in the one before the last. In that one you said, that you would die, before you would live in the house with my sister ; but in your last letter you said, that you was glad to hear from me and my sister, and to tell her to write to you if she wanted to. I don't suppose she wants to, for I don't expect that she has forgot yet you said that there was a hatred formed in you against her, that would always be there. I only write this to show you the disposition in some people to seek an advantage to deceive again, but it was too severe to be led into it again by fair promises and sweet talk. *You said you would come back if I said so, but I shall never say so ; and if you want to come,* you can do so at your own expense, and go back in the same way ; for what I have said, is gone into a decree, and sealed in heaven. I shall never say different while I keep my natural mind," &c.

From this extract we find that the complainant had written a letter, in quick succession after one from the defendant of extreme bitterness, and in it had changed and softened her tone, ceased her exactions, and unconditionally offered to return to her husband,—making pacific advances to his sister, whose absence she had previously required as the condition of her return. The rejection of this pacific proposition was final, conclusive, harsh, severe and cruel. It left to the complainant no hope, that by penitence for her past errors, or pardon for past injuries to her, or by humiliation, or patient waiting, or submissive entreaty, she could be restored to the place at her husband's fireside, which she had, perhaps improperly, vacated. Thus the defendant is converted into a wrongdoer, and must be deemed to have deserted his wife.

The letters admitted in evidence must be testimony against, as well as for the complainant. They show much impropriety of language on the part of the complainant, and the indulgence of some bad temper and jealousy ; but certainly these faults, as set forth in the letters, are not such as will justify or excuse a desertion on the part of her husband, even under

the most extensive import allowed in any of the cases to the doctrine of recrimination.—King v. King, 28 Ala. 315; Gray v. Gray, 15 Ala. 785 ; Jones v. Jones, 13 Ala. 147 ; Bishop on M. & D. § 524–6.

While the abandonment is shown in the defendant's letters, it would not be permissible for us to grant a decree for divorce upon that alone.   To do so, would involve a violation of the statute, which prohibits a decree of divorce on confession of the parties.—Code, 379, § 1966.   This section of the Code was construed in King v. King, 28 Ala. 315, and was held not to forbid the rendition of the decree, when the confessions do not constitute the only evidence, but are proved in conjunction with other circumstances and conduct which confirm or tend to confirm them, and repel the idea of collusion between the parties.   The testimony, aside from defendant's letters, proves that the defendant's motive in marrying was low and selfish ; that after his marriage, and during his residence in this State, he neglected his wife ; that he went to South Carolina, leaving her behind ; that he made no preparations to enable her to follow him ; that she went to him in that State, voluntarily ; that she remained only nine months, and returned alone, and has since remained at her father's house in this State.   The testimony discloses no invitation to return from him after she left South Carolina; and it is positively proved that she wrote him a letter proposing to return to him in South Carolina, to which it is fair to infer the letter from him above mentioned was a reply. This testimony strongly corroborates the conclusion of a desertion on the husband's part, which is deducible from his letter.

The chancellor's decree is made by him to rest upon the want of jurisdiction, supposed to result from the facts that the cause of divorce transpired in the State of South Carolina, and that the domicile of the husband is in that State. We are not sure that the desertion, consisting of a refusal to permit the wife to return to the matrimonial abode in South Carolina, (she being in Alabama when she received the refusal,) can be understood to have been in South Carolina.   But, however that may be, we decide on the authority of Thompson v. The State, 28 Ala., that the jurisdiction of the court is

not dependent upon the place at which the act complained of occurred. It is the settled law, that the domicile of the wife follows that of the husband. But we think that, as an exception to the general rule, the wife must be allowed to acquire, in the State where she is living at the time of the act complained of, a distinct domicile from her husband's, after the occurrence of a legal and adequate cause of divorce, for the purpose of obtaining the divorce. When she has been abandoned by the husband, and denied the privilege of dwelling with him and going to him, the presumed identity of domicile becomes a fiction, founded on no adequate reason, and inconsistent with humanity itself. The law will then uphold her in living apart from him, and will even treat her cohabitation with him as a condonation of the offense. The capacity of the wife, under such circumstances, to acquire a separate domicile seems to be impliedly denied by a *dictum* in Harrison v. Harrison, 20 Ala.; though in that case the validity of a South Carolina decree for alimony in favor of the wife, who had left her husband in this State, where the matrimonial domicile was, is maintained upon the ground, that the interposition of the South Carolina court was necessary to the protection of the wife, and that the ground of complaint was complete in South Carolina before the parties removed from that State and resided in this. Many American authorities of the highest respectability, upon reasoning which seems to us conclusive, maintain the capacity of the wife to acquire, under such circumstances, a domicile at the place of her actual abode, separate from the husband, for the purpose above indicated.—Harteau v. Harteau, 14 Pick. 181; Hull v. Hull, 2 Strob. Eq. 174 ; Tolen v. Tolen, 2 Blackf. 407; Frary v. Frary, 10 New Hamp. 61 ; Brett v. Brett, 5 Metcalf, 233 ; Fishli v. Fishli, 2 Littell's R. 337; Fickle v. Fickle, 5 Yerger, 203.

Whether a different rule would have prevailed, had the wife not been actually living in this State at the time of the abandonment, it is unnecessary to inquire. The complainant was actually living in the State of Alabama at the time of the desertion, and has since resided here; the desertion having occurred more than three years before the commencement of

Hanberry v. Hanberry.

this suit. Under our statute we hold that she is entitled to a divorce.

As it is made the duty of the register to make out and transmit the record to the speaker of the house of representatives, we deem it proper to remand the cause for decree in the court below.—Code, § 1978.

The decree of the court below is reversed, and the cause remanded, that the chancellor may render a decree in pursuance to the foregoing opinion.