# Jones *v.* Jones.

*Bill in Equity for Divorce and Alimony.*

95　443
98　377

1. *Legislative act granting divorce; constitutionality of.*—Under constitutional provisions now of force, unlike those formerly existing, there is no express limitation of the power of the General Assembly to grant a divorce by legislative act; but the provision which declares that "no *special* or local law shall be enacted for the benefit of individuals or corporations, in cases which are or can be provided for by a general law, or where the relief sought can be given by any court of this State" (Art. IV, § 23), applies to proceedings for divorce, which are regulated by the general statutes, and renders void any legislative act granting a divorce to a particular person, whether on any of the grounds specified in the statutes, or any other ground whatever.

[Jones v. Jones.]

2. *Abandonment of wife, as ground of divorce.*—If a husband drives his wife from his house, refusing to let her return for two years or more, she is entitled to a divorce on the ground of abandonment (Code, § 2322), although his act was provoked by exhibitions of ill-temper on her part, the use of coarse and indelicate language, grossly offensive behavior, or other misconduct not constituting a ground of divorce in his favor.

3. *Alimony to wife; aggravating conduct on her part.*—When a divorce is granted to the wife on the ground of abandonment, she is entitled to an allowance for alimony although her own misconduct caused her husband to put her away; but, in making the allowance, "regard being had to all the circumstances of the case" (Code, § 2333), the court will reduce it on account of such misconduct on her part.

APPEAL from the Chancery Court of Fayette.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 14th April, 1890, by Mrs. Josephine E. Jones, against her husband, or late husband, W. W. Jones, and sought a divorce on the ground of abandonment, and alimony. The parties were married in December, 1881, and lived together as man and wife, according to the allegations of the bill, until April, 1887, when the defendant drove his wife from his house. During the session of the General Assembly of 1888–89, the defendant procured the passage of a private statute, entitled "An act for the relief of William W. Jones," which was approved Feb. 18th, 1889, and in these words : *"Be it enacted,"* &c., "that William W. Jones, of Fayette county, be, and he is hereby, released from the bonds of matrimony now existing between him and his wife, Josephine E. Jones ; which divorce shall have the same effect as a divorce granted by a court of chancery, and the said Jones is permitted hereby to contract matrimony again ; *provided,* that the provisions of this act shall not affect in any manner the rights of the said Josephine E. Jones in the courts of this State in the recovery of alimony in any proceedings in any court of this State for a divorce from the said William W. Jones."—Sess. Acts 1888-9, p. 390. The complainant, in her original bill, set out this statute, and recognized its validity, but claimed a divorce and alimony under the terms of the proviso. The defendant, by demurrer to the bill, assailed the validity of the proviso, and denied that the complainant was entitled to alimony after a divorce had been granted to him ; and in his answer he stated the facts which, as he claimed, caused him to procure the passage of said legislative act, and further claimed that these facts deprived the complainant of the right to alimony. The chancellor overruled the demurrer to the bill, and held said legislative act unconstitutional and void ; and on final hearing on pleadings and proof, he granted

[Jones v. Jones.]

a divorce to the complainant, with leave to either party to marry again. He also held that the complainant was entitled to alimony, and allowed her $220 as alimony from the time of the abandoment, $25 per month as permanent alimony, and $300 as solicitors' fees. Each part of this decree is assigned as error.

McGuire & Collier, John B. Sanford, and Tompkins & Troy, for appellant.—(1.) The power to grant divorces pertains to the legislative department of the Government, and has been exercised by the States generally when not expressly taken away by constitutional provisions.—5 Amer. Eng. Encyc. Law, 746-7; 1 Bish. Marriage & Divorce, §§ 660-86; *Strader v. Graham*, 10 How. U. S. 82, 93; *Green v. State*, 58 Ala. 190; *State v. Gibson*, 36 Ind. 389; *Sewall v. Sewall*, 122 Mass. 156; *Hopkins v. Hopkins*, 3 Mass. 158; *Hunt v. Hunt*, 72 N. Y. 217; *Lamar v. State*, 3 Heisk. Tenn. 287; *Frazer v. State*, 3 Texas, 263; *Cook v. Cook*, 56 S. C. 195; Cooley on Const. Limitations, 132-3; *Starr v. Pease*, 8 Conn. 541; *Wright v. Wright*, 56 Amer. Dec. 223; *Crane v. McGinnis*, 19 *Ib.* 237. (2.) The Constitution now of force, unlike former ones, contains no express provision limiting the legislative power in the matter of divorces, and the omission is suggestive of an intention to leave the General Assembly untrammelled in the exercise of its sovereign power, leaving each case to be determined, in the legislative discretion, on its own peculiar facts and circumstances; and the courts will not interfere with the exercise of this discretion, recognizing the right of the law-making department of the Government to construe constitutional provisions in matters left to its discretion. An examination of the Session Acts shows that, at each session of the General Assembly, similar legislative acts have been passed, and the disastrous consequences which would result from a judicial declaration of their invalidity is addressed to the serious consideration of the court. (3.) The legislative act is not violative of the constitutional provision relative to special relief laws, "in cases which are or can be provided for by a general law, or where the relief sought can be given by any court." The act itself does not show the reasons for its passage, or the facts on which the General Assembly acted; and the courts can indulge in no presumptions or conjectures against the validity of its action. If the facts shown by the evidence in this case were the facts which induced the passage of the legistative act, it is evident that no cause of divorce existed under the general

[Jones v. Jones.]

statutes; and the question was presented to the General Assembly, whether it would amend the general statutes to meet such cases, or leave each case to be determined on its own peculiar facts, within legislative discretion. Whether a general statute would have reached this particular case, is at least doubtful; and the General Assembly may have purposely reserved to itself the right to pass on each similar case as it might arise, while declining, on grounds of public policy, to add to the causes of divorce specified in the general statutes. (4.) Assuming the validity of the legislative act of divorce, the complainant was without any standing in a court of equity. If a divorce was thereby granted to her husband, the marriage relation between them was severed and ended, and all rights acquired under it, or dependent on it, ceased: she could not sue for either divorce or alimony.—5 Amer. & Eng. Encyc. Law, 746, note; *Boykin v. Rains*, 28 Ala. 343; *Barber v. Root*, 10 Mass. 262; 15 N. J. Eq. 149; 36 Iowa, 319; *Murray v. Murray*, 84 Ala. 366; *Kamp v. Kamp*, 59 N. Y. 212; *Cummins v. Cummins*, 38 How. Pr. 200. (5.) The misconduct of the wife, as alleged and proved, though it might not be a sufficient ground of divorce, was matter for consideration in the determination of her claim to alimony; and the allowance made to her, it is submitted, was excessive and unreasonable.

ARNOLD & EVANS, *contra.*—(1.) The subject of divorce is regulated by the general statutes, which specify the grounds on which a divorce may be granted, the mode of proceeding, &c. These provisions take the subject out of the legislative domain, and relegate it to the courts. The maxim applies, *Expressio unius est exclusio alterius.* If the defendant had legal ground for a divorce, the courts were open to him; if he had none, the legislative doors were shut against him, as well as the doors of the court. The frequency of divorces by legislative act, under former constitutional provisions, is admitted; and this may have been one of the reasons why, on grounds of public policy, the whole subject was transferred to the courts. Incompatibility of temper, personal abuse, conduct calculated to disturb domestic tranquillity, are recognized grounds of divorce in other States, but are not known in Alabama; and when they are recognized here, it must be by general statutory provisions. (2.) If the legislative act of divorce is valid, the complainant's rights are saved by the proviso.—Cooley's Const. Limitations, 178-80; *Stein v. Leeper*, 78 Ala. 522; *Ramagnano v. Crook*, 85 Ala. 229. (2.) The right to alimony is not matter of

[Jones v. Jones.]

discretion.—*Edwards v. Edwards*, 80 Ala. 98 ; *Jeter v. Jeter*, 36 Ala. 403 ; *Ex parte King*, 27 Ala. 338 ; *Lovett v. Lovett*, 11 Ala. 763. The sums fixed by the chancellor were reasonable.—*King v. King*, 28 Ala. 315 ; *Lovett v. Lovett*, 11 Ala. 770 ; *Jeter v. Jeter*, 36 Ala. 391.

WALKER, J.—This is a suit by the wife against her husband for a divorce from the bonds of matrimony, and for alimony. It is contended for the appellant that all claim to such relief was barred by the act of the General Assembly of Alabama releasing him from the bonds of matrimony theretofore existing between him and the appellee.—Acts of Ala. 1888 89, p. 361. If that act was valid, no divorce could be decreed in this case, as the bonds of matrimony had already been dissolved when the bill was filed. The proviso in the act only covered a contingency which the enactment itself rendered impossible ; for, if the act operated to divorce the parties, the wife could not thereafter maintain any proceedings for a divorce from her former husband, and the proviso does not purport to save her rights to alimony, except in proceedings by her for a divorce. If the act had "the same effect as a divorce granted by a court of chancery," an end was thereby put to the relation of marriage, and, as a consequence, so far as the husband was concerned, the divorce having been granted in his favor, all duties and obligations necessarily dependent upon the continuance of that relation immediately ceased.—*Harrison v. Harrison*, 20 Ala. 449 ; *Boykin v. Rains*, 28 Ala. 343.

Before the power of granting divorces from the bonds of matrimony was confided to the courts in England, Parliament assumed and exercised the right of passing special acts dissolving the bonds of marriage. Many of the State legislatures in this country have passed special acts of divorce, the validity of which has been sustained when not rendered invalid by the operation of constitutional prohibitions. The courts have generally recognized the right of the State legislatures, when not restrained by the constitutional limitations, to exercise the same power over the subject as was possessed by the English Parliament. And the enactment of general laws conferring upon the courts also authority to grant divorces in certain enumerated cases has not usually been regarded as having the effect of abridging the plenary power of the legislature to dissolve the bonds of matrimony by special acts, either in the same or in other classes of cases.—1 Bishop on Marriage and Divorce, 6th ed., §§ 660 to 695 ; Cooley on Constitutional Limitations, 6th ed.,

[Jones v. Jones.]

128 to 132; 5 Amer. & Eng. Encyc. of Law, 747; *Maynard v. Hill*, 125 U. S. 190; *Starr v. Pease*, 8 Conn. 541; *Wright v. Wright*, 2 Md. 429.

The power to grant divorces by special acts is somewhat anomalous as a legislative function. It has been conceded, rather because it had been too long assumed and acted on to be denied, than because on principle it could be regarded as properly within the legitimate sphere of legislative action. Kent says: "The question of divorce involves investigations which are properly of a judicial nature, and the jurisdiction over divorces ought to be confined exclusively to the judicial tribunals, under limitations to be prescribed by law."—2 Kent's Con. 106. Cooley says: "But it is safe to say, that the general sentiment in the legal profession is against the rightfulness of special legislative divorces; and it is believed that, if the question could originally have been considered by the courts, unembarrassed by any considerations of long acquiescence, and of the serious consequences which must result from affirming their unlawfulness, after so many had been granted and new relations formed, it is highly probable that these enactments would have been held to be usurpations of judicial authority, and we should have been spared the necessity for the special constitutional provisions which have since been introduced."—Cooley on Con. Lim., 6th ed., 132.

In each of the former Constitutions of this State there was a provision prohibiting the granting of divorces except in cases provided for by law, by suit in chancery. The Constitution of 1819 further provided, that "no decree for such divorce shall have effect, until the same shall be sanctioned by two thirds of both houses of the General Assembly." Constitution of 1819, Art. VI, § 13. The corresponding section of the Constitution of 1861 was in these words: "Divorces from the bonds of matrimony shall not be granted, but in cases provided for by law, by suit in chancery. But decrees for divorce shall be final, unless appealed from within three months from the date of the enrollment thereof." Constitution of 1861, Art. VI, § 13. The substance of this provision was carried forward into the Constitutions of 1865 and 1868 respectively. – Constitution of 1865, Art. IV, § 30; Constitution of 1868, Art. IV, § 30. The existence of these express constitutional restraints may be regarded as implying a recognition of the power of the legislature to grant divorces in special cases, unless the exercise of such power is prohibited by the Constitution.

The present Constitution of the State contains no express

provision on the subject of divorce. It, however, prescribes general restraints upon the power of the legislature which were not found in the former Constitutions. The question to be considered is, whether the omission of a special provision against granting divorces except in judicial proceedings left the legislature free to exercise an original plenary power over the subject, and to grant divorces by enactments for special cases. It is clear that such special legislation for individual cases is not in harmony with the policy of preserving an equality of all persons before the law, without favors to some and discriminations against others under similar circumstances. The subjects of marriage and divorce are regulated by the general laws of the State, statutory and common. These general laws fixed the rights, duties and obligations of the parties to the marriage relation. They also provide for the dissolution of that relation in certain contingencies, and prescribe the causes which authorize such dissolution, the kind and measure of relief to be granted, and the mode of proceeding to secure it. If a husband or a wife, who is not entitled under the general law to be relieved of the duties and obligations of the marriage relation, may be freed threfrom by a special act of the legislature for his or her relief, the result is to dispense with the general law for the benefit of an individual. Even if the circumstances are such that the same relief could be assured by proceedings under the general law, the granting of the relief by a special act of the legislature is equally an exemption from the operation of a general law, as the necessity of having recourse to the remedies which others in similar circumstances must pursue is dispensed with. Such legislation singles out an individual for special indulgence, and exempts him from obedience to the general rules which others must confrom to. Several provisions of the present Constitution of the State indicate a purpose to confine the legislature, as far as practicable, to the enactment of general laws applicable alike to all persons under similar circumstances. It is made the duty of the General Assembly to "pass general laws, under which local and private interests shall be provided for and protected."—Constitution of Ala., Art. IV, § 25. It is also provided, that "no special or local law shall be enacted for the benefit of individuals or corporations, in cases which are or can be provided for by a general law, or where the relief sought can be given by any court of this State; nor shall the operation of any general law be suspended by the General Assembly for the benefit of any individual, corporation, or association."—*Ib.* Art. IV.

§ 23. The legislature owes equal obedience to each of the clauses of this section of the Constitution; but such obedience can not be effectually enforced by the courts in the one case as in the other. There is a marked difference between the two clauses. This court has held that, under the first clause, a discretion is necessarily left to the legislature to determine whether the particular object or want "can be provided for by a general law;" and that the exercise of such discretion can not be revised by the courts.—*Clarke v. Jack*, 60 Ala. 271. No such construction can be put upon the language of the second clause of the section. That is a positive, unconditional limitation of the power of the General Assembly. It can not suspend the operation of any general law, for the benefit of any individual, corporation or association. Within the range of this prohibition there is no room for the exercise of any discretion by the legislature, or by the courts. It is not necessary for the purposes of this case to define the scope of this provision. Clearly, it has the effect of leaving the legislature without the power to pass a special act relieving an individual of any liability or obligation which a general law imposes upon him in favor of another, or exempting him from the operation of the remedies afforded by the general law for the enforcement of such liability or obligation, or giving him a right or remedy against another to which he is not entitled under the general law. We need not decide whether this provision would render invalid an act merely conferring upon an individual, corporation or association a privilege involving no interference with the rights of others under the general law, or removing disabilities, or granting such relief as could not operate as an infringement of any rights or remedies to which others are entitled under the general law.—*McKenzie v. Gorman*, 68 Ala. 442. It is sufficient for the purposes of this case to hold that the provision is effectual to render invalid a special act of the legislature for the relief of an individual, which would necessarily operate to absolve him from the duties and obligations which the general law imposes upon him as a husband, to suspend in his favor the general law which others, similarly situated, must conform to in order to obtain relief from the bonds of matrimony. The special act relied on by the appellant was unconstitutional, and presents no obstacle to the relief sought by the appellee, if she is entitled to relief under the general law.—*Darling v. Rogers*, 7 Kan. 592; *Simonds v. Simonds*, 103 Mass. 572.

More than two years before the bill was filed, the appel-

[Jones v. Jones.]

lant required the appellee to leave his house. They have not lived together since. The husband has not provided for the wife's support, and has not consented to her return to his house. These facts are not disputed. They show a "voluntary abandonment" of the wife by the husband, within the meaning of sub-division 3 of section 2322 of the Code. A husband may as effectually abandon his wife by putting her away from him and denying her the privilege of dwelling with him, as by going off himself from their former residence, leaving her there, and not permitting her to live with him.—*Morris v. Morris*, 20 Ala. 168; *Hanberry v. Hanberry*, 29 Ala. 719; *Kinsey v. Kinsey*, 37 Ala. 393; 2 Am. & Eng. Encyc. of Law, 803. It is not contended that the husband is entitled to a divorce from the wife on any of the grounds prescribed by the statute. Nothing short of the existence of a ground of divorce in favor of the husband against the wife can defeat the right of the wife to a divorce from her husband because of his abandonment of her without her consent, for the period and in the manner fixed by the statute. The proof against the wife in this case, if believed, shows no more than that she was guilty of grossly offensive behavior in her husband's presence on one occasion; that at times she used coarse and indelicate language; that once when her husband's young daughter by a former marriage was standing near the fire-place, she stirred up the fire, so that the flame caught the clothing of the child, and she gave no assistance in the rescue; and that she wrote and circulated a number of anonymous letters cruelly and foully slandering another of her husband's daughters. If she was guilty of such exhibitions of ill-temper and a mean disposition, it may be readily understood how the marriage relation became irksome to the husband. However hard it may have been for him to endure such conduct, yet it did not, under the statute, afford him ground for relief from an uncongenial association, or furnish him with a legal justification for his abandonment of his wife.—*Bryan v. Bryan*, 34 Ala. 516; *Hanberry v. Hanberry, supra*; 5 Am. & Eng. Encyc. of Law, 805.

When a divorce is granted in favor of the wife, if she has no separate estate, or if it is insufficient for her maintenance, she is entitled to an allowance out of the estate of her husband; and, in such case, "the allowance must be as liberal as the estate of the husband will permit, regard being had to the condition of his family, and to all the circumstances of the case."—Code, §§ 2332 and 2333. The conduct of the wife before her husband's abandonment of her is a circum-

stance to be considered in determining the amount of the provision to be decreed in her favor. Her mere failure to contribute to the peace and happiness of the home can not be allowed to justify the husband in casting her off. But she can not be regarded as entirely blameless, if, while she was living with her husband, without provocation from him, she was inconsiderate or disrespectful in her bearing toward him, or was unkind in her treatment of his children by a former marriage, or if she habitually pursued a course of conduct calculated to vex and harass a reasonably indulgent husband. The inducement of gaining an advantage by a liberal provision for her separate maintenance is to be withheld from a perverse wife, who, though guilty of nothing amounting to a ground of divorce against her, yet, without previous fault on the part of her husband, so bears herself in her relations with him and his household, as to provoke him into wishing to get rid of her society. Overindulgence is not to be shown to a wife who has been abandoned by her husband, when her own failure to act the part of a dutiful wife has helped to put her in the position of "having the law on her side" in a proceeding against the husband for divorce. Such misconduct on the part of the wife may be considered as, in a measure, palliating the offense of the husband, and as abridging her claim to an allowance from his estate for her separate maintenance. *Jeter v. Jeter*, 36 Ala. 391; *Lovett v Lovett*, 11 Ala. 763. The complainant herself testified: "Dr. Jones was a kind husband to me, one of the kindest in the world." The evidence shows, without contradiction, that he was a man of excellent character, enjoying the respect of the community in which he has lived for many years. There is nothing to indicate that he was at fault in his relations with his wife, until he required her to leave his house. It is unnecessary to detail the evidence as to the misconduct of the wife. Some of the more serious charges against her are not satisfactorily established. Enough, however, is proved to show that she was principally responsible for the unhappy state of feeling in her husband's household. Her conduct was well calculated to foment discord. To say the least of it, she was far from discreet or forbearing in her treatment of her husband's children by a former marriage. Her course towards her husband, and toward those who were naturally the objects of his affection and solicitude, was well calculated to destroy his regard for her, and to overtax his forbearance. True, it was the duty of the husband to persevere in his efforts to prevent an estrangement between himself and his wife, and

to avoid, even at the expense of his own comfort and peace of mind, an open breach of the marriage relation. He should not have yielded to the impulse to abandon his wife, as she had committed no offense to justify him in that course. But the wife's own folly in acting so as to forfeit the regard of a kind husband is not to be overlooked in determining the provision to be made in her favor.

The evidence indicates that the husband owns property, including his interest in a stock of goods, worth about six thousand dollars in excess of his liabilities. He is engaged in business as a country merchant, and is also a practicing physician, though he has been trying to give up his practice, and gets but little income from that source. Three of his children by a former marriage, two daughters and one son, are living with him and are dependent upon him for their support. They are all minors. His home is in a small hamlet in Fayette county. The habits of life are simple and inexpensive. The price of board in respectable families in that neighborhood is from five to seven and one half dollars per month, with everything furnished. Boarders have been received in the defendant's family at such prices. The complainant has no property which yields her any income. She is entitled to have provision made for her maintenance in the condition in life of her husband. The amount is not to be swelled because she chooses to reside in one of the suburbs of the city of Birmingham, where the cost of living is greater. In view of the course pursued by the wife before the separation, and of all the circumstances of the case, our conclusion is that she should receive fifteen dollars per month as a provision for her maintenance after the divorce. If she had been wholly without fault, a more liberal allowance would have been proper. This is less than was allowed by the chancellor. In this respect his decree will be here modified. The appellant has nothing to complain of in the amounts he was required to pay for compensation to the solicitors for the appellee and for temporary alimony. With the modification above ordered the decree will be affirmed.

Modified and affirmed.