## In re SCOTT.

(District Court, D. Delaware. January 21, 1904.)

### No. 78.

1. BANKRUPTCY—DISCHARGE—OBJECTIONS.

Where S. in September, 1902, obtained property on credit from a firm upon a materially false statement in writing made to such firm for the purpose of obtaining such property on credit, and in March, 1903, was adjudged a bankrupt on his own petition, and subsequently applied for

a discharge, *held*, that by virtue of the act of February 5, 1903 (32 Stat. 797, c. 487 [U. S. Comp. St. Supp. 1903, p. 409]), amendatory of the bankruptcy act of July 1, 1898 (30 Stat. 544, c. 541 [U. S. Comp. St. 1901, p. 3418]), a specification in opposition filed by the firm, which had proved its claim, setting up such obtaining of property, presented a bar to his discharge.

**2. SAME.**

Section 14 of the bankruptcy act of July 1, 1898 (30 Stat. 550, c. 541 [U. S. Comp. St. 1901, p. 3427]), deals wholly with the subject of discharges in bankruptcy, and subdivision 3 of that section, as amended February 5, 1903 (32 Stat. 797, c. 487 [U. S. Comp. St. Supp. 1903, p. 411]), deals solely with a condition precedent to the discharge of a bankrupt in future cases. It does not undertake to provide for the recovery of any property, or to set aside or otherwise affect any transaction.

**3. STATUTES—CONSTRUCTION.**

A statute is not necessarily retroactive or retrospective because its operation in a given case may be dependent upon an occurrence anterior to its passage.

**4. BANKRUPTCY—DISCHARGE.**

Statutory provisions regulating the conditions on which bankrupts may be discharged are remedial in their nature with respect to the bankrupts or to their creditors, or to both, and the strict rules of construction or interpretation appropriate to retroactive or retrospective laws are inapplicable to them.

(Syllabus by the Court.)

In Bankruptcy.

Herbert H. Ward and John F. Neary, for bankrupt.
Christopher L. Ward, for creditors.

BRADFORD, District Judge. Robert H. Scott filed his petition in voluntary bankruptcy March 18, 1903, and on the same day was adjudged a bankrupt. Having made application for a discharge, certain of his creditors, trading as Watson & Company, whose claim had been duly proved and allowed, filed their specification in opposition, alleging that Scott obtained September 19, 1902, property on credit from that firm upon a materially false statement in writing made to the firm for the purpose of obtaining such property on credit. The particulars of the said statement are fully set forth in the specification. The bankrupt has demurred generally. The demurrant does not claim that the specification lacks sufficient particularity. Whatever defect there may be in this respect has been waived. No question of the kind was made at the hearing; and, further, the counsel for the demurrant in their brief filed in the case say:

"The question raised by the demurrer is, whether the obtaining of property on such a statement, made nearly five months before the passage of the amendatory act, by which it is made a ground for refusal to discharge, comes within the purview of the said amendatory act of February 5, 1903 [32 Stat. 797, c. 487; U. S. Comp. St. Supp. 1903, p. 409], and constitutes a sufficient ground for refusal to discharge in this case."

The demurrant has thus limited himself to the above question. The act of February 5, 1903, among other things, amends section 14b of the bankruptcy act of July 1, 1898 (32 Stat. 797, c. 487 [U. S. Comp. St. Supp. 1903, p. 411], by excepting from the authority of the judge to grant a discharge cases in which the applicant has "obtained property on credit from any person upon a materially false

statement in writing made to such person for the purpose of obtaining·such property on credit." This provision does not contain any limitation of time relatively to the commencement of proceedings in bankruptcy within which property must have been obtained on such false statement in order to operate as a bar to a discharge. Its language equally applies to such obtaining of property before and after the passage of the amendatory act. The question raised on the demurrer resolves itself into two inquiries, first, whether such obtaining of property prior to February 5, 1903, can operate as a bar to a discharge in bankruptcy proceedings instituted after that date, and, if so, whether such obtaining of property must not have occurred within the period of four months next preceding the filing of the petition. The last section of the amendatory act (32 Stat. 801) is as follows:

"Sec. 19. That the provisions of this amendatory act shall not apply to bankruptcy cases pending when this act takes effect, but such cases shall be adjudicated and disposed of conformably to the provisions of the said act of July first, eighteen hundred and ninety-eight."

The present case certainly is not included in the above saving or exception; for it was not pending February 5, 1903, when the amendatory act took effect. Proceedings in bankruptcy were not instituted until more than a month after that date. The bar to a discharge resulting from obtaining property on credit on a materially false statement in writing is a novel feature of the bankruptcy legislation of the United States. Nothing like it is to be found in any of the earlier bankruptcy acts, whatever analogies, remote or close, they may contain. Here, the obtaining of property on the false statement occurred more than four months prior to the date of the amendatory act and about six months prior to the filing of the petition in bankruptcy. The text-books throw little, if any, light on the question whether under these circumstances such obtaining of property will operate by virtue of subdivision 3 of section 14b as a bar to a discharge. Collier states that the property must have been obtained "perhaps since the amendatory act became a law," and that "the question will probably not be settled until it reaches the higher courts." Collier on Bankruptcy (4th Ed.) pp. 171, 537. Brandenburg, speaking of the false statement mentioned in subdivision 3, says:

"While no specific time is fixed by the statute within which such statement must have been made, by analogy to other provisions of the law it is evident that Congress intended that the statement must have been made within four months of the institution of the bankruptcy proceedings." Brandenburg on Bankruptcy (3d Ed.) § 370.

He, however, fails to specify any analogous provisions tending to support his conclusion. Nor does he touch the point whether the obtaining of property on a false statement before the passage of the amendatory act, though within four months, next preceding the filing of the petition, will bar a discharge. I am aware of only one case, In re Petersen, 10 Am. Bankr. Rep. 355, which directly deals with subdivision 3 of section 14b. It was there held by Judge Lochren that, where the bankrupt made the false statement November 6,

1902, and on the strength of it obtained property on credit on and prior to January 1, 1903, and became a voluntary bankrupt February 12, 1903, no discharge could be granted. It is a decision directly to the point that subdivision 3 of section 14b is applicable to cases in bankruptcy, commenced after the passage of the amendatory act where the obtaining of the property on the false statement occurred prior to such passage. In that case, the property was obtained within four months prior to the filing of the petition; but no reference was made to that fact and apparently it was considered of no importance. It is contended on the part of the demurrant, however, that subdivision 3 cannot apply to this case unless it is retroactive in its operation; that statutes are presumed to have been intended to operate prospectively rather than retroactively, and should be so construed or interpreted unless they plainly show a contrary intention; and that there is nothing in the amendatory act tending to overcome the presumption that subdivision 3 was intended to operate prospectively and not retroactively. While conceding the generality, but not the universality, of the application to statutes of the above presumption, and without pausing at this point to discuss the considerations which may determine, control or affect the application of that presumption to a given statute, is it true that the amendatory act cannot apply to this case unless it is retroactive in its operation? The amendatory act, having no application to pending cases in bankruptcy, applies only to cases commenced after its passage. Section 14 deals wholly with the subject of discharges in bankruptcy, and subdivision 3 of that section, furnished by the amendatory act, deals solely with a condition precedent to the discharge of the bankrupt in future cases, namely, that he has not "obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit." In order that a statute may have a retroactive operation, there must be some subject on which it may retroact. But the amendatory act does not undertake to provide for the recovery of the property so obtained on credit, or to set aside or otherwise affect the transaction. Subdivision 3, in its relation to cases commenced after its passage, where the property was obtained prior thereto, certainly is not an ex post facto law, nor does it violate or disturb any vested right of the bankrupt or his creditors. A bankrupt can have no vested right to a discharge until the conditions required by law to authorize it have been satisfied. A statute is not necessarily retroactive or retrospective because its operation in a given case may be dependent upon an occurrence anterior to its passage, or, in the language of Endlich, "because a part of the requisites for its action is drawn from a time antecedent to its passing." Endlich, Int. Stat. § 280. I fail to perceive that subdivision 3, in its application to a case where the property was obtained on credit before its enactment, if it be so applicable, is in any legitimate sense a retroactive or retrospective law, or that the strict rules of construction or interpretation appropriate to such laws have any pertinency here. Further, the bankruptcy act includes a large body of remedial legislation. It was designed to relieve unfortunate but honest debt-

ors, and to secure a proper distribution of their assets among their creditors. The latter object is quite as important as the former. Statutory provisions regulating the conditions on which bankrupts may be discharged are remedial in their nature with respect to the bankrupts or to their creditors, or to both. A strained construction of subdivision 3 is, therefore, inappropriate. When the language of the amendatory act is taken in its natural and usual sense, it plainly discloses an intention that the subdivision in question should be applicable to all cases in bankruptcy commenced after its enactment, whether the property was obtained on credit before or only after such enactment. No prospective terms as "hereafter" or "after this act takes effect," or equivalent expressions, are anywhere employed with reference to the obtaining of the property on credit. Such obtaining of property, in its relation to the date of application for a discharge, is in the past, without a time limitation, and thus includes time elapsed before as well as time elapsed since the passage of the amendatory act. Nor do I find in any of the provisions of the amendatory act or of the act of July 1, 1898, as amended, anything to support the contention that the property must have been obtained on credit within four months next preceding the filing of the petition. A comparison and contrast of the several subdivisions of section 14b with each other negative such an idea. To impute such an intention to Congress on the strength of fancied analogies, which do not exist, would be to indulge in mere speculation and judicial legislation. If the amendatory act be defective or unsatisfactory by reason of the absence of a time limitation either before or after its enactment, or before the filing of the petition in bankruptcy, the remedy rests solely with the law making power.

Cases decided under other statutes in pari materia throw much light on the questions here involved. Ex parte Lane, 3 Metc. (Mass.) 213, was an appeal from a decree refusing the appellant a discharge under the Massachusetts insolvent law of 1838 (St. 1838, p. 449, c. 163). It was held that an amendatory act, passed in 1841 (St. 1841, p. 402, c. 124) so modifying the provisions of that law that no certificate of discharge should be granted to a debtor, who within six months before the filing of the petition by or against him had given a preference to a pre-existing creditor, applied to a debtor who had filed his petition for the benefit of the law of 1838 before the amendatory act was passed. Judge Wilde delivering the opinion of the court said:

"It is clear, that the appellant had no vested right to a discharge, at the time of filing his petition. Such a right could be acquired only by proving, at the time of his application for a certificate of discharge, that he had in all respects complied with the provisions of Sts. 1838 and 1841, by which only a right could be acquired. The latter statute, therefore, is not to be considered a retrospective act, disturbing vested rights; but as altogether prospective in its operation, although it might depend, in some cases, on acts done before it took effect."

Ex parte Lane is an a fortiori case, in view of the fact that, while here the petition was not filed until after the passage of the amendatory act, there the petition was filed before. Ex parte Lane was cited

with approval in Eastman & Others v. Hillard, 7 Metc. (Mass.) 420, where it was held that an amendatory act, changing the conditions on which insolvent debtors could obtain a discharge under the Massachusetts insolvent laws, was applicable to a case commenced before such act went into operation. Chief Justice Shaw, in delivering the opinion of the court, said:

"The time not having come, when that act went into operation, at which the insolvent could apply for his discharge, or the master grant it, such application for a discharge, the right of the creditors to oppose, and the power of the master to act upon it, were all future, and must, we think, be regulated by the late statute; and the provisions of the act so regulating future proceedings were prospective in their operation, and not inconsistent with the just exercise of legislative power."

There is much conflict in the decisions under the bankruptcy act of March 2, 1867 (14 Stat. 517, c. 176), and its amendments, so far as they bear on the subject now discussed; but it seems to me that the more carefully considered and authoritative decisions support the conclusions reached in the case of In re Petersen and the Massachusetts cases. It may not be amiss at this point briefly to refer to some of the opposing decisions and dicta. In the case of In re Rosenfield, Fed. Cas. No. 12,058, decided in 1868, Judge Field held that a fraudulent conveyance made before the passage of the bankruptcy act of March 2, 1867, was no ground for the refusal of a discharge in bankruptcy. He said:

"The 29th section contains an enumeration of seventeen distinct acts, any one of which, if shown to have been committed by the bankrupt, is an absolute bar to his discharge. These acts are in the nature of offences, created and defined by the bankrupt law, the penalty for the commission of which by the bankrupt, is, the forfeiture of his right to a discharge. Now, suppose there was no limitation whatever in the law itself, as to the time within which these acts must have taken place or been performed. Would it not have been necessary to aver, and prove, that they had been committed since the passage of the law, in order to deprive the bankrupt of his right to a discharge? To have held that acts, committed before its passage, were offences against the bankrupt law, would have been to make that law, if not an ex post facto law, in the strict sense of the term, yet at least a law retroactive or retrospective in its character."

It does not clearly appear from Judge Field's opinion whether his conclusion was based on his interpretation of the terms of section 29 (14 Stat. 531), or on the doctrine asserted in the above quoted passage. It seems to have been expressed in the alternative. In the case of In re Moore, Fed. Cas. No. 9,751, decided in 1868, the discharge of a bankrupt was opposed on the ground, among others, that he had prior to the passage of the act fraudulently executed a mortgage for the purpose of concealing his property. Judge Fox said:

"The bankrupt law cannot be made to have a retroactive effect, and punish a party, by refusing him a discharge for acts committed by him prior to the passage of the law. A fraudulent preference or transfer of a debtor's property, by the act, is made an offence, for which the punishment prescribed by the act is, a failure to obtain his discharge. To thus punish a party, the offence for which the punishment is inflicted must have been committed since the passage of, and in violation of, a law then in force."

Judge Fox refers to the case of In re Rosenfield, and to an unreported decision in his own district. In the case of In re Hussman,

Fed. Cas. No. 6,951, decided in 1869, Judge Ballard held that, on the terms of section 29, a fraudulent sale of property prior to the passage of the bankrupt act was no bar to the granting of a discharge. He also said:

"The withholding of a discharge from a bankrupt is in its nature a penalty for some improper conduct, and to refuse a discharge because of the improper conduct of the bankrupt, prior to the passage of the bankrupt act, would be to make the act retroactive."

In the case of In re Hollenshade, Fed. Cas. No. 6,610, decided in 1868, Judge Leavitt, in holding that payments or transfers or conveyances of property, made prior to the passage of the bankrupt act by an insolvent could not constitute a legal objection to his discharge, based his decision wholly on his construction of the terms of section 29, saying:

"The words before quoted, 'since the passage of this act,' apply to and limit the meaning of all the subsequent enumerations."

In the case of In re Keefer, Fed. Cas. No. 7,636, decided in 1870, Judge Longyear held that a fraudulent conveyance made prior to the passage of the bankruptcy act was no bar; saying:

"In Re Rosenfield, Cas. No. 12,058, Judge Field, of the district of New Jersey, held that in such case, the act, in order to constitute a bar to a discharge, must have been committed since the passage of the bankrupt act. I fully concur in the reasoning and conclusion in that case."

But in the case of In re Cretiew, Fed. Cas. No. 3,390, decided in 1871, Judge Hall held that a specification in opposition to a discharge should not be stricken out because all the transactions therein alleged occurred before the passage of the bankruptcy act. Among other things, he said:

"The bankrupt act was intended to operate, and has uniformly been held to operate upon and provide for the discharge of debts created before as well as after its passage, and in respect to debts contracted before its passage it is clearly a retrospective and retroactive law so far as it authorizes the discharge of such prior debts. Prior to the passage of the act the debtor had no right to a discharge from such debts, and he now has no right to such discharge except in the cases provided for and upon the conditions prescribed in the act. The provisions under consideration create no 'offence' and there is no forfeiture of an existing right denounced as the penalty for a newly created offence for the simple and obvious reason that a right to a discharge in the cases provided for did not exist when the act was passed and therefore the provisions now under consideration are not retroactive or retrospective in the offensive or proper sense of those terms. The act gives a debtor a right to a discharge of a debt contracted prior to its passage, provided he fully complies with its provisions and is not brought within the limitations, exceptions or prohibitory provisions of the act, and as this right only exists by virtue of the provisions of the bankrupt act, (which provisions, as has been stated, are retroactive and retrospective as to debts contracted before its passage,) the provisions which Judge Field considered retroactive or retrospective in their application to acts done before the passage of the act, are not in fact so, but only exceptions in restriction or limitation of the grant of power to the bankruptcy court, under which grant alone a debtor could, in a case not excepted from its operation, assert a right to a discharge. These exceptions and limitations are, therefore, so far as this case is concerned, in restraint of a retrospective and retroactive law, and the considerations which require courts not to give such construction to a statute as to

make it retroactive in its effects should operate in favor of and not against a creditor whose debt, as in this case, accrued before the passage of the bankrupt act."

In the case of In re Goodfellow, Fed. Cas. No. 5,536, decided in 1870, Judge Lowell held that an alien debtor, who while residing abroad made conveyances which, if made in this country, would have been preferences under the bankruptcy law of 1867, and afterwards and within six months came to the United States and went into bankruptcy, was not entitled to his discharge. Among other things, he said:

"It has been argued in behalf of the bankrupt, that, granting the preferences to have been made, and to be within the period contemplated by the statute, still they were made while he was a resident of the province, not subject to our law and not contemplating bankruptcy under it, and that in such a case the law cannot affect him; and as it is not shown that the acts were illegal when and where they were done, they must be presumed to have been legal, and if so, they are good wherever they may be sought to be impeached. There is much force in this argument, and, indeed, it would be irresistible if the question were of the title to the goods or money conveyed in preference, or of any criminal responsibility; but the question here is, whether a person who applies to be discharged from his debts must not show that he has complied with the conditions imposed by law, even although he was not aware of them and was not subject to the law when he did the acts. Congress has an undoubted right to annex such conditions as it chooses to the grant of a discharge. It might enact, for instance, that certain things done before the passage of the act should be ground for refusing it. And this seems to me an analogous case. The statute says: 'You shall not be released if you have given certain preferences.' Now, preferences are not necessarily illegal; they are the payment of just debts. It depends altogether upon the fact of subsequent bankruptcy within a certain time whether they turn out to be legal or not. The fact that the transaction is legitimate between the parties and even against all the world is not important, if the intent existed in the mind of the debtor. The act requires an equal distribution of the estate, and if this fails through the act of the debtor, as, for instance, if he has lost a part of it in gaming, the discharge is not granted. It is not a punishment; it is not retroactive. It is simply a condition precedent. * * * If the estate of the debtor has been disposed of in accordance with the statute, a discharge shall be granted; otherwise, not."

In the case of In re Seeley, Fed. Cas. No. 12,628, decided in 1879, Judge Brown, now Mr. Justice Brown, held that the acts enumerated in Rev. St. § 5110, taken substantially from section 29 of the bankruptcy act of March 2, 1867, were violations of conditions precedent rather than offences or forfeitures of a right to a discharge. On this point he said:

"Again, counsel for the bankrupt argued that the jury ought to pass upon the question of intent in every case, as the acts mentioned in section 5110 are in the nature of offences or forfeitures of a right the bankrupt has to his discharge, and the proceeding is therefore quasi criminal. Support for this position is found in an incidental remark of Judge Field in the case of In re Rosenfield (supra). It is clear, however, that a man has no moral or legal right to be released of his debts, except by virtue of some statute, and that, in the enactment of such statute, congress has the power to impose such conditions as it pleases to the granting of a discharge. It has, indeed, refused it altogether in voluntary cases, except by consent of a certain proportion of creditors. I am better pleased with those opinions which treat the discharge as a favor, and the commission of one of the acts specified, as the violation of a condition precedent. Such was the position of Judge Hall in Re Cretiew, Fed. Cas. No. 3,390, and of Judge Lowell in Re Goodfellow, Fed. Cas. No. 5,536."

I shall now briefly refer to a different line of cases decided under the bankruptcy act of 1867 and its amendments, relating to certain modifications of the conditions for the granting of discharges. In the case of In re Francke, Fed. Cas. No. 5,046, decided September 1, 1874, Judge Blatchford held that section 9 of the act of June 22, 1874 (18 Stat. 180, c. 390), amendatory of the bankruptcy act of March 2, 1867, did not apply to cases of involuntary bankruptcy commenced before its passage. Among other things, he said:

"The language of the ninth section is general. It says 'in cases of compulsory or involuntary bankruptcy,' and 'in cases of voluntary bankruptcy.' This language is satisfied by applying it to cases to be commenced after the passage of the act of 1874. That is the natural meaning of such language. It is not to be construed as applying to cases commenced before, and pending at the time of, the passage of the act of 1874, unless the intention to have it so apply is apparent from the act."

In the case of In re Perkins, Fed. Cas. No. 10,983, decided September 26, 1874, Judge Hopkins followed the decision of Judge Blatchford in the case of In re Francke in holding that section 9 of the amendatory act was inapplicable to pending cases, saying:

"I fully concur with the learned judge in his interpretation of the amended act, and agree with him that the provisions of the 9th section apply only to cases commenced after its passage."

In the case of In re Sheldon, Fed. Cas. No. 12,747, decided in April, 1875, Judge Blatchford expresses his adherence to the opinion delivered by him in the case of In re Francke, as follows:

"I still adhere to the opinion expressed by me in Francke's Case, supra, that the provisions of the ninth section of the act of 1874, in respect to discharges, both in cases of involuntary bankruptcy, and in cases of voluntary bankruptcy, apply only to cases to be commenced after the passage of that act. My views expressed in that case have not been overruled by a superior authority, and I believe them to be sound in principle."

But in June, 1875, after the decision of In re Perkins and In re Sheldon, Judge Blatchford's decision in the case of In re Francke was, on review in the circuit court, reversed by Mr. Justice Hunt and Judge Woodruff, Fed. Cas. No. 5,045. It was also pointedly disapproved of by Mr. Justice Miller in the case of In re King, Fed. Cas. No. 7,781, as will presently appear. In the case of In re King, decided in 1874, it was held by Mr. Justice Miller, in reviewing the action of the district court, that section 9 of the amendatory act of June 22, 1874, relating to the discharge of bankrupts, applied to cases pending at the time that act took effect, as well as to cases thereafter commenced. Among other things, he said:

"The inquiry here is, does this 9th section apply to cases commenced before the act of 1874 took effect and not then concluded, as well as to cases thereafter commenced? In my judgment it does, and the bankrupt who brings this petition is entitled to his discharge. I have been shown an opinion of Judge Blatchford, in Re Francke, Fed. Cas. No. 5,046, prepared with his usual care, in which a different conclusion is reached. His reasoning is ingenious, but, as it seems to me, somewhat artificial, and not at all satisfactory to my mind. I think the general rule is that such remedial provisions do apply to pending cases, unless there is something to show that the legislature intended to exclude them, and I can discover no such intention in the 9th section, or any part of the act of 1874."

He added, not that his conclusion was based upon, but was "very much fortified by the express repeal of the provision in the original act requiring fifty per centum of assets, and by the consideration that the 9th section of the act of 1874 covers the whole ground, and provides for both voluntary and involuntary cases." In the case of In re Griffiths, Fed. Cas. No. 5,825, also decided in 1874, Judge Lowell reached the same conclusion as Mr. Justice Miller in the case last referred to. In the course of his opinion he said:

"And this brings me to what I venture to call the fallacy that such a change in the bankrupt law is retroactive if it is made to affect pending cases. A law which discharges debts already contracted may well be called retroactive; and this law, if retroactive at all, would be so not merely as to cases begun, but as to contracts entered into before its passage. But it is well settled that a mere modification of the conditions upon which a discharge shall be granted to bankrupts, is not retroactive. * * * Section 14 says that all proceedings may be discontinued upon the assent of a majority of the creditors. There can be no doubt that this covers all cases, whether begun before or after June 22. To settle a case in that way may disappoint some hopes of creditors, but it is remedial and disturbs no vested rights. So of the section now under consideration. The words seem plain to my apprehension; and the cases cited show how such laws have usually been understood."

In the case of In re Gifford, Fed. Cas. No. 5,408, decided in 1877, where a voluntary petition was filed September 26, 1876, and all the debts upon which the bankrupt was liable as principal were contracted prior to January, 1869, Judge Withey, after stating that "it is contended for the bankrupt that the previous condition of the law, which gave a discharge as to all debts contracted prior to 1869, whether the assets pay anything or not, entitles this applicant to a discharge," and after referring to the cases of In re Francke and In re Sheldon, said:

"Mr. Justice Miller, at the circuit, in Re King, Fed. Cas. No. 7,781, holds the opposite view to that expressed by Judge Blatchford. See, also, Judge Lowell in Re Griffiths, Fed. Cas. No. 5,825. The cases referred to were all involuntary, but the point decided in each is alike applicable to voluntary cases. It is simply a question as to the application of a remedial statute. We fully agree with the views expressed in the last-named two cases. The act of 1874 governs in both voluntary and involuntary cases. * * * As the law now stands we hold that in the absence of consent by creditors in voluntary cases, no matter when commenced nor when debts were contracted, the assets must pay thirty per cent, not fifty per cent, or there can be no discharge."

The counsel for the demurrant refer to Seaboard Steel Casting Co. v. William R. Trigg Co. (D. C.) 124 Fed. 75, not as being directly in point, but as furnishing an analogy to the case in hand. It there appears that two petitions in involuntary bankruptcy were filed April 21, 1903, against a corporation, setting forth, among other things, that the corporation December 23, 1902, while insolvent, committed an act of bankruptcy, in that, because of insolvency, a receiver was that day put in charge of its property by an order of the court of chancery of Richmond, Virginia. Judge Waddill held on demurrer that the act of bankruptcy as alleged was not sufficient to support the petitions. He dwelt upon the presumption that statutes are intended to operate prospectively, rather than retroactively, and on an examination of various provisions in the act of July 1, 1898, and the amendatory act

of February 5, 1903, reached the conclusion stated. In that case there were material considerations differentiating it from the one before this court and strongly tending to show that the provision relating to the new act of bankruptcy was not intended to apply where the act occurred prior to the passage of the law. That case related, not to a mere condition precedent to a discharge, but to the question of liability to be thrown into bankruptcy. It has no pertinency here.

On the most careful consideration I have been able to bestow on this case, I have reached the conclusion that the demurrer must be overruled.