### In re SHAFFER.

(District Court, N. D. West Virginia. April 30, 1909.)

BANKRUPTCY (§ 407*)—DISCHARGE—FALSE FINANCIAL STATEMENT.

> Bankr. Act July 1, 1898, c. 541, § 14b, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as amended by Act Cong. Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 (U. S. Comp. St. Supp. 1907, p. 1026), denies a discharge to a bankrupt who has obtained property on credit from any person on materially false statements in writing, made to such person to obtain such property on credit. *Held* that, where a creditor relied on a bankrupt's statement, which was materially false in fact, in selling him goods on credit, the bankrupt was not entitled to a discharge, though the mistake was made in good faith and was not intentional.
>
> [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 729; Dec. Dig. § 407.*]

In Bankruptcy. Upon application for discharge.

J. Hop. Woods, for bankrupt.
Douglass & Steptoe, for creditors.

DAYTON, District Judge. The sole ground of opposition to the discharge asked for here is based upon the amendment of February 5, 1903, to Bankr. Act July 1, 1898, c. 541, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), incorporated in section 14 of chapter 3 (Act Feb. 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1907, p. 1026]), which denies a discharge to a bankrupt "who has obtained property on credit from any person upon a materially false statement, in writing, made to such person for the purpose of obtaining said property on credit."

It seems that on the 14th day of October, 1904, the bankrupt, being then engaged in the mercantile business, applied to the Koblegard Company, the objecting creditor, to purchase goods on credit, and signed on that day a printed statement entitled as follows:

"The following is a true and correct statement, and is made to the Koblegard Co., especially for their benefit, and as a basis of credit for any goods they may ship us."

In this statement items of assets aggregating $10,350 in value are set forth, and liabilities to the amount of $2,536.33. Goods to the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

amount of $330.79 were purchased by the bankrupt of this company on that day, payable within 60 days thereafter, and afterward on the 3d day of December, in the same year, an additional bill of $98.46 was purchased. On the 20th day of January, following, Shaffer filed his voluntary petition in bankruptcy, and in his schedule listed $8,290 of assets and $8,668.53 of debts. His assets were found upon adjudication to be comparatively worthless, and a dividend of a little more than 10 per cent. was realized by the creditors. Prior to this time, on December 2, 1904, he paid to the Koblegard Company $230.79 on the $330.79 original purchase of goods, and gave his check for the remaining $100, which, however, was protested and not paid. Criminal proceedings were instituted in March, 1906, against Shaffer, based upon the charge that he had obtained these goods under false pretense, which, being tried before a jury, resulted in his acquittal. On his application being made for a discharge, an objection was made thereto, and this court referred the matter to a referee to report the facts. This the referee has done, and has reported the bankrupt not entitled to a discharge.

The signing and delivery of the statement to the Koblegard Company is admitted by the bankrupt, but he insists that after the goods were purchased, but before separation and delivery, a member of this company called him back and caused him to make and sign the statement. He further testifies that at the time he informed this member of the company that the statement was not a full and complete one. So far as the items of assets contained therein are concerned, there is no dispute, it being agreed that in this particular the statement was substantially correct. The contest is wholly over the accuracy of that part relating to the liabilities. It subsequently turned out that at the time this statement was made the bankrupt was indebted something over $11,000, as shown by the list of outstanding debts which he admitted upon the examination before the referee and creditors in the bankruptcy proceeding. In extenuation and justification of the discrepancy existing between his statement to the Koblegard Company, as to these liabilities, and the evidence given by him before the referee, he now insists that at the time this statement was given his property, in effect, had been inherited by him in connection with his mother, brother, and sisters from his father's estate, which was unsettled, substantially held in common, and that he was unacquainted with the actual condition of the accounts relating thereto existing between him and the other members of the family. Further extenuating facts relied upon by him are that for six months from February until September, just prior to the making of this statement to the Koblegard Company, he had been dangerously sick with typhoid and pneumonia, during which time he had been wholly unable to attend to his business, and in fact had no knowledge of its true condition, and verily believed at the time he made such statement that it was true and correct; and that he did not ascertain his true condition until afterward, when it was revealed to him by counsel whom he consulted. It may be added that the whole proceeding shows pretty clearly that Shaffer was illiterate, in-

experienced, and incompetent to properly care for a mercantile business.

If it were a matter of discretion with me, I frankly confess that the extenuating circumstances in this case would lead me to grant this discharge; but, upon careful investigation of the law governing the matter, I am 'constrained to reach the conclusion that I am not permitted, under the circumstances, to do so. This special provision of the bankrupt act has no counterpart in any of the prior bankruptcy laws of this country. Under the construction that has been given to it, the objecting creditor has to establish two things: First, that the bankrupt obtained property on credit; second, that he made to the person from whom he obtained it a materially false statement, in writing, for the purpose of so obtaining it. The good but mistaken faith with which such statement is made cannot be taken into consideration. The statement must be materially false. In fact, it is not necessary that it should be intentionally false. A creditor must rely upon it when parting with his property, and, if he did so rely upon it and it was materially false in fact, it is sufficient to defeat a discharge. If the creditor did not rely on it, or if the debtor did not make the statement for obtaining the property on credit, it will not bar a discharge, no matter how false the statement may be. It may be pleaded by the creditor selling the goods, or by any other person entitled to oppose the discharge. Loveland on Br. (3d Ed.) 809, § 280a; In re Scott (D. C.) 126 Fed. 981; In re Harr (D. C.) 143 Fed. 421; In re Peterson, 10 Am. Bankr. Rep. 355; In re Goodhile (D. C.) 130 Fed. 782; In re Dresser (D. C.) 144 Fed. 318; In re Pincus (D. C.) 17 Am. Bankr. Rep. 331, 147 Fed. 621.

That the statement made in this case, as to this bankrupt's liabilities, was materially false, although it may not have been intentionally so, it seems to me is clearly shown; that the Koblegard Company relied upon and extended credit on account of such statement, I think is also clear. If it was not relied upon, no possible explanation of the conduct of the member of the company who, according to Shaffer's own statement, called him back, after he had selected the goods, to make such statement, can be conceived from the circumstances. If he had not intended that his company should rely upon such statement, and if he did not procure such statement from Shaffer of his financial condition for the purpose of ascertaining and determining whether or not he was entitled to credit, it would have been wholly unnecessary, and there would have been no reason for his securing this statement at the time and under such circumstances.

The authorities touching this matter are so uniform and strong that, notwithstanding any sympathy I may have for the unfortunate condition of the bankrupt, I am constrained to deny the discharge.