## In re SIMON.

(District Court, W. D. New York. January 11, 1913.)

1. BANKRUPTCY (§ 407*)—DISCHARGE—OBJECTIONS—FALSE STATEMENT MADE TO SECURE CREDIT—INTENT.

The bankrupt having ordered a large quantity of goods from a manufacturer in December, 1909, in response to a commercial agency's request for a statement which had been applied for by the seller, gave to the agency a statement which largely overestimated the value of stock on hand, also overestimated the amount of cash on hand and in banks by $6,281.85, and included large values for leaseholds on stores in various cities which were of no value. This statement having been forwarded to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the seller, credit to the amount of $21,000 was extended, and in October, 1910, the concern failed with liabilities of $809,801.54, and assets of $441,219.82. *Held*, that such facts showed that the bankrupt made the statement which was materially false for the purpose of obtaining property on credit, and was therefore not entitled to a discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. § 407.*]

**2.** BANKRUPTCY (§ 407*)—DISCHARGE—FALSE STATEMENT IN WRITING.

Ordinarily statements given by merchants to commercial agencies to continue a business rating are regarded merely as a basis for continued credit, and not as a medium through which particular credit is given or obtained, in which case a statement, though false, is not a bar to the merchant's discharge in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. § 407.*]

**3.** BANKRUPTCY (§ 407*)—FALSE STATEMENT—DISCHARGE—KNOWLEDGE.

Where a bankrupt, active in the business of his firm, signed and delivered a statement of assets and liabilities of the firm, grossly overstating the cash on hand, investments, merchandise, items, and accounts payable, with knowledge that inquiries were being made concerning the firm's credit, participating in the advantages obtained by the deception, he could not successfully assert, in order to obtain his discharge, that he did not know that the statement was false.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. § 407.*]

**4.** BANKRUPTCY (§ 407*)—DISCHARGE—MATERIALLY FALSE STATEMENT—DELIVERY—TIME.

It is not necessary that a materially false statement made by a bankrupt to obtain goods on credit should have been made or the goods delivered within four months prior to bankruptcy in order to bar his discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. § 407.*]

**5.** BANKRUPTCY (§ 409*)—DISCHARGE—GROUNDS—FAILURE TO KEEP BOOKS.

An objection to a bankrupt's discharge that there had been a failure to keep books of account, etc., was not sustained, where an expert bookkeeper testified that he was able substantially to ascertain from the books and records delivered to the trustees the financial condition of the firm.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 739, 752–757; Dec. Dig. § 409.*]

**6.** BANKRUPTCY (§ 409*)—DISCHARGE—DENIAL—KEEPING BOOKS.

A bankrupt is not bound to keep books in the most scientific manner, and a discharge will not be denied for failure to keep books, if the bankrupt's financial condition can be substantially ascertained from the books and records kept.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 739, 752–757; Dec. Dig. § 409.*]

**7.** BANKRUPTCY (§ 414*)—DISCHARGE—CONCEALMENT OF BOOKS AND PAPERS.

In proceedings for a bankrupt's discharge, evidence *held* insufficient to warrant a finding that the bankrupt had concealed books and papers relating to the firm's business.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 720–722; Dec. Dig. § 414.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Michael C. Simon, individually and as surviving partner of the firm of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Ely Meyer & M. C. Simon, bankrupts. On petition to review a referee's finding overruling specifications of objection to the bankrupt's discharge. Reversed and specifications sustained in part.

See, also, 197 Fed. 102, 105.

Louis W. Severy, of New York City, for International Trust Co.

Werner & Harris, of Rochester, N. Y. (Hugh J. O'Brien, of Rochester, N. Y., of counsel), for American Woolen Co.

Clarence W. McKay, of Rochester, N. Y., for Traders' National Bank.

HAZEL, District Judge. The special master found that the bankrupt Simon did not, in contemplation of his bankruptcy, fail to keep proper books of account with intent to conceal his true financial condition, or the financial condition of the firm of Meyer & Simon of which he was a member; that, even assuming that the books were improperly kept, Simon had nothing to do with keeping them; that he did not obtain money or property on credit based upon a materially false statement made by him in writing; that he did not, as claimed by the objecting creditors, destroy certain books and records of the partnership by which its true financial condition could have been ascertained; and that he did not make a false oath in the bankruptcy proceeding. The specifications of objection to the discharge of the bankrupt embodying the various grounds of opposition with the evidence in their support are submitted for consideration upon the ground that the special master erred in his conclusions. Claim is also made by the trustees that it was proven before the referee in bankruptcy that the bankrupt had concealed from his creditors assets amounting to $250,000; and that he should be required to surrender to his trustees the amount concealed. Upon this phase of the controversy the special master found that no assets whatsoever were concealed, to which determination exceptions have been filed, and an appropriate question is presented for review. The involuntary petition was filed on the 7th day of October, 1910, and the adjudication followed on October 25th. The liabilities were $809,801.54, and the assets $441,219.82. A brief description of the nature of the business of the bankrupt and the status of the firm at the time of filing the petition in bankruptcy follows.

[1] The partnership of Meyer & Simon engaged in 1897 in the business of manufacturing men's clothing at Rochester, N. Y., for the retail trade. The business started with a capital of $6,000 contributed by Meyer, who died just before the petition in bankruptcy was filed, nothing in the way of property or money having been contributed by Simon, a practicing lawyer, who after Meyer's death conducted the business as surviving partner. The venture foreshadowed success as is indicated by the fact that quite soon after organization the firm located retail stores at Detroit, Boston, Chicago, Kansas City, Minneapolis, and St. Paul, and formed and controlled corporations for the sale of clothing at Atlanta, Indianapolis, Birmingham, Los Angeles, Louisville, and Evansville. In 1909 and 1910 the firm borrowed extensively from banks and obtained merchandise on credit

from the American Woolen Company. Statements in writing were made purporting to show the financial condition of the firm, and the trustees and objecting creditors claim that they made loans and advances, and gave credit to the firm in reliance thereon. The statements delivered to the Traders' National Bank, the National Bank of Commerce, and to R. G. Dun & Co., and thence transmitted to the American Woolen Company, were alike and read as follows:

Inventory taken December 31st, 1909.

### Assets.

| | |
|---|---:|
| Stock on hand | $302,187 85 |
| Cash on hand and in bank | 15,729 30 |
| Book accounts | 21,598 75 |
| Investments | 424,180 70 |
| Fixtures | 12,500 00 |
| | $776,196 60 |

### Liabilities.

| | |
|---|---:|
| Merchandise | $ 68,822 40 |
| Banks | 180,000 00 |
| | $248,822 40 |
| Net worth | $527,374 20 |
| Insurance | $250,000 00 |

[Signed]                                   Ely Meyer & M. C. Simon.

The statements were untrue in various important particulars. For instance the cash on hand and in banks was $6,281.85 less than claimed in the statement. That such was the fact appears clearly enough from the testimony of the accountant who examined the books at the request of the receivers in bankruptcy, and which testimony it seems to me was not successfully controverted. It is claimed by the trustees that the books of the bankrupt failed to show the true value of the merchandise on hand, though the statements gave such value as $302,-187.85. No inventory of merchandise on hand was kept, the bankrupt testifying to the customary destruction thereof at the end of the year. That the item of $302,187.85 representing clothes and trimmings largely exceeded the real value thereof is not seriously controverted. The claim that there was no intention to overestimate such value, and that the bankrupt was unacquainted with the contents of the statements as they were not actually written by him or under his direction, is insufficient, as hereinafter more particularly stated, to justify holding that what he actually did was unaccompanied by a fraudulent intention or purpose. One of the statements was signed and delivered by him personally, and another was delivered by him and his partner. Circumstances arising in the conduct of a partnership or joint venture can readily be conceived which would justify holding one of the partners blameless for acts done by a partner with fraudulent intent, and under such circumstances a discharge should not be denied him, but it is inconceivable that the bankrupt Simon, having signed the statement and delivered the same, was ignorant of the purport of the statements and their falsity. Certain it is that he participated in the benefit of the loans from the banks and of the

credit obtained by the asserted false statements which were the open sesame by which the sums of $15,000 from the National Bank of Commerce and of upwards of $100,000 from the Traders' National Bank were obtained. It was his duty under the circumstances to have such familiarity with the statements of the firm's financial condition as would enable him to vouch for their accuracy.

It is also shown that in December, 1909, the American Woolen Company took an order from the bankrupt, and that, before making a delivery, inquiry was made of Dun & Co. as to the financial standing of the firm. At the request of the commercial agency, the bankrupt delivered to it a copy of the above-quoted statement signed by him in the name of the firm. Upon transmission of this statement to the American Woolen Company, credit was given the firm to the amount of $21,000, the value of the merchandise previously ordered, but not delivered. In my mind there is no doubt that the credit was given in reliance upon the truthfulness of the representations contained in the statement, which, as has been said, was false in the particulars dwelt upon, and also in respect to the item of investment which was stated as amounting to $424,180.70 and included $240,000 purporting to be the value of leasehold interests in stores in different cities. That such values were overstated by approximately $100,000 is undoubted. Nothing was paid outright for the leases, and their value was largely speculative and conjectural. Did the bankrupt intentionally falsify the claim of investments to deceive his creditors? Expert evidence was given to show that the lease in Boston had no distinct market value, the bankrupt having in fact agreed to pay too large a rental, and that efforts to dispose of such lease had failed before the making of the statement, yet $20,000 was stated to be its value. The value of the leasehold in Chicago, which contained a restriction against subletting the premises without the consent of its lessor, was likewise overstated.

An analysis of the evidence indicates that in the year 1909 the firm sustained losses of upwards of $300,000, losses of such magnitude that Simon may be presumed to have been aware thereof at the time of making the statements in question to the banks and to the commercial agency, statements which owing to the excessive values put upon the investment account and upon the stock on hand show a large increase of business and property. The bankrupt knew that statements were annually given to Dun & Co., Commercial Agency, for general circulation among the trade, and he thoroughly understood the purpose and usefulness thereof. He knew that further credit and the character of the firm's rating depended upon the representations made, and he also knew, as indicated by the exhibit Culver letter, that the trade was commenting unfavorably upon the firm's financial condition.

[2] Ordinarily statements are given by merchants to commercial agencies to continue a business rating, and are regarded merely as a basis for continued credit and not as a medium through which particular credit is given or obtained, and in such a case, even when the statement is false, the bankrupt is not debarred from a discharge in bankruptcy. In re Russell, 176 Fed. 253, 100 C. C. A. 77. In that

case Judge Lacombe in the opinion of the court called attention to subdivision 3 of section 14b of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427]), as amended in 1903 (Act.Feb. 5, 1903, c. 487, § 4, 32 Stat. 797), and which read as follows:

"(3) obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit."

After stating the history of the amendment and its wording as it left the House of Representatives and was afterwards changed in the Senate, the court said:

"It would seem from this that the ordinary statement of financial condition made to a mercantile agency for general circulation among its inquiring subscribers would not be within the statute."

Several cases were reviewed without an expression of opinion thereon by the court which substantially held that, where statements were made to commercial agencies with the intent that they should be shown to creditors or used to meet inquiries made for the special purpose of extending credit if satisfactory, the same rule applied as if the bankrupt had himself made the false statements and procured credit thereon. In 1910 subdivision 3 was again amended and broadened. It now reads:

"(3) obtained money or property on credit upon a materially false statement in writing, made by him to any person or his representative for the purpose of obtaining credit from such person." Act June 25, 1910, c. 412, § 6, 36 Stat. 839 (U. S. Comp. St. Supp. 1911, p. 1496).

And in Re Petersen, 10 Am. Bankr. Rep. 355, it is held that the right to a discharge is governed by the law at the time of filing the petition.

In this case Simon knew that inquiries were being made to the commercial agencies concerning the firm of which he was a member, and he no doubt made the objectionable statement to quiet such inquiries and to obtain credit from the American Woolen Company, and loans and advances from banks, and not simply for the purpose of continuing the previous rating. In Re Kyte (D. C.) 174 Fed. 867, it was held that the procurement of credit upon an intentionally false statement made to a mercantile agency to prevent the giving out of unfavorable reports to subscribers bars a discharge.

[3] To simply assert that he did not know that the statement was false in respect to cash on hand, investments, and merchandise items, or accounts payable does not excuse the bankrupt. His signature thereon and delivery thereof, his activity in the business, and his participation in the advantages obtained by the deception raise a presumption of an evil intention, which he has not overcome by reliable proof, to obtain the creditors' goods upon the strength of the misrepresentations. Hardie v. Swafford Bros. Dry Goods Co., 21 Am. Bankr. Rep. 457, 165 Fed. 588, 91 C. C. A. 426, 20 L. R. A. (N. S.) 785; In re Schwartz, 28 Am. Bankr. Rep. 670, 201 Fed. 166. There are cases which hold intention to deceive on the part of the bankrupt as

wholly immaterial. In re Shaffer (D. C.) 22 Am. Bankr. Rep. 147,
169 Fed. 724; In re Terens (D. C.) 22 Am. Bankr. Rep. 895, 172 Fed.
938; In re Augspurger (D. C.) 25 Am. Bankr. Rep. 83, 181 Fed. 174.

[4] The contention by the bankrupt that to bar his discharge the
merchandise obtained by means of the false statements must have been
delivered within four months of bankruptcy is untenable. The Bank-
ruptcy Act, as amended in 1910, does not prescribe any limitation of
time within which the credit must have been given or the merchandise
delivered, and the authorities cited by counsel for the bankrupt do
not uphold him in his contention. See 3 Remington on Bankruptcy,
§ 2570; Loveland on Bankruptcy, § 730; In re Scott (D. C.) 11 Am.
Bankr. Rep. 327, 126 Fed. 981; In re Terens, supra.

[5] The specification relating to the failure to keep books of ac-
count is claimed to be supported by the failure to keep an inventory
of merchandise on hand and a more complete account of the trans-
actions with the several subsidiary stores, but as the expert bookkeeper
who testified for the trustees was able to substantially ascertain from
the books and records which came into the possession of the trustees
the financial condition of the firm, this objection is not proven. The
evidence shows that journals, ledgers, cash books, and blotters were
kept by a single bookkeeper of the firm who had been in its employ
for a number of years; that such books contained the usual informa-
tion; that the branch stores kept sets of books, duplicates of which
were kept at Rochester; and that it was not customary to keep inven-
tory books or private ledgers.

[6] In these circumstances I am of opinion that the principle ap-
plies which provides that books need not be kept in the most scientific
manner, and that a discharge should not be denied the bankrupt on
that ground. In re Rauchenplate, 9 Am. Bankr. Rep. 763. The de-
struction of the inventory upon which the statements were based was
no doubt a suspicious circumstance, and it has been considered upon
the question of their falsity.

[7] The third specification deals with the concealment and destruc-
tion of books, and evidence is given to show that on the night prior
to the bankruptcy Simon was seen to leave his business clandestinely
and late at night, bearing away with him what seemed to the witness
Grover to be books and records. The theory of the trustees that such
articles were the missing inventory books is not, however, sufficiently
proven, and I am disinclined to give this item of testimony the weight
claimed for it, especially as the witness Sullivan, the bookkeeper of
the firm, swore that no inventory books were kept, and that all the
firm books were delivered to the trustees when they entered into pos-
session.

The fourth specification relates to concealment of assets. Inasmuch
as it has already been found herein that the bankrupt misrepresented
and exaggerated the value of the assets of the firm, I am unable to
hold on this record that he also concealed assets from his trustee in
the large amount claimed. If the bankrupt possessed the amount
of money and property claimed to have been concealed from his trus-
tees, the probabilities are that the affairs of the firm would not have

come into the bankruptcy court at the time they did. In support of this contention, stress is laid upon Simon's conduct subsequent to the bankruptcy with regard to his expenditures and plans to organize another company, but I am unable to perceive sufficient testimony that rises to the dignity of evidence to bear out the claim of concealment, and mere suspicion, conjecture, or surmise is not a basis for such a conclusion.

There were other reasons assigned for withholding the discharge, among which were omissions to schedule property, and the making of a false oath in this proceeding, but the specifications lack proof. Preliminary objection was made by the bankrupt to the sufficiency of the specifications because of improper verification, but I think such technical objection may be overruled.

My conclusion is that the trustees and the objecting creditors have proven by a fair preponderance of the evidence that the bankrupt by materially false statements in writing made with an intention of misrepresenting the value of his assets obtained money and property from the objecting creditors who relied upon such statements. The discharge will be withheld on that ground, and, as the evidence is insufficient to sustain specifications two, three, and four, they are dismissed. An appropriate order embodying this disposition of the specifications and of the question which was submitted for review and answered in the negative may be entered.