(76 South. 81)

BARRINGTON v. BARRINGTON.
(3 Div. 241.)

(Supreme Court of Alabama. Feb. 15, 1917. Rehearing Denied May 31, 1917.)

1. STATUTES ☞264—CONSTRUCTION—RETROSPECTIVE LAWS—"REMEDIAL STATUTES."

Remedial statutes which do not create, enlarge, diminish, or destroy vested rights are favored by the courts, and their retrospective operation is not obnoxious to the spirit and policy of the law.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 345.

For other definitions, see Words and Phrases, First and Second Series, Remedial Statute.]

2. STATUTES ☞265—CONSTRUCTION—RETROSPECTIVE OPERATION—STATUTES AFFECTING VESTED RIGHTS.

A statute which gives a new legal effect to conduct or conditions occurring or existing prior to its enactment, thereby imposing upon any person unanticipated disabilities or alterations of legal status, is retrospective in a sense which is odious to the law, and even though it does not offend the Constitution by an impairment of the obligation of the contract or by creating a crime or punishment ex post facto, it will not be given retroactive effect unless by its express terms or by unmistakable implication the Legislature must have so intended.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 346, 347.]

3. DIVORCE ☞4—STATUTE—CONSTRUCTION.

Acts 1915, p. 370, authorizing divorce to a wife when without support from the husband she lives apart from him for five years next preceding the filing of the bill, and has bona fide resided in the state during all of such period, is not remedial in character, but gives legal effect to marital conduct and relations by converting a complete separation into an authorized ground for divorce, and falls within the class of statutes whose retrospective operation is denied, unless its language requires expressly or by unmistakable implication such retrospective operation.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. § 5.]

4. STATUTES ☞263—CONSTRUCTION—GRAMMATICAL SENSE.

The strict grammatical sense of language used by the Legislature may give way to a construction required by other rules of interpretation, so that words apparently importing retroactive effect will, in the absence of other reasons supporting a literal construction, be so construed as to produce a retroactive operation.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 344, 349.]

5. DIVORCE ☞4—STATUTE—CONSTRUCTION— RETROACTIVE APPLICATION.

Acts 1915, authorizing divorce from the bonds of matrimony in favor of the wife "when the wife without support from him has lived separate and apart from the bed and board of the husband for five years next preceding the filing of the bill, and she has bona fide resided in this state during all of said period," does not indicate a legislative intendment of a retrospective operation, but authorizes a divorce only upon the lapse of five years from that of the date of its enactment.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. § 5.]

6. DIVORCE ☞4—STATUTES—CONSTRUCTION.

Divorce statutes are generally held not to be retrospective.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. § 5.]

McClellan, J., dissenting.

Appeal from Chancery Court, Montgomery County; O. S. Lewis, Chancellor.

Suit for divorce by Mary W. Barrington against R. L. Barrington. Decree for plaintiff, and defendant appeals. Reversed, rendered, and remanded.

Beckwith & Davison, of Montgomery, and C. W. Collins, of Washington, D. C., for appellant. Hill, Hill, Whiting & Stern, Tilley & Elmore, and Steiner, Crum & Weil, all of Montgomery, for appellee.

SOMERVILLE, J. By section 3795 of the Code the chancery court is authorized to grant divorces from the bonds of matrimony "in favor of the wife when the husband has committed actual violence on her person, attended with danger to life or health, or when from his conduct there is reasonable apprehension of such violence." By the act approved September 10, 1915 (Sess. Acts 1915, p. 370), the quoted section was amended by the addition of the following:

"Or when the wife without support from him has lived separate and apart from the bed and board of the husband for five years next preceding the filing of the bill, and she has bona fide resided in this state during all of said period."

The complainant filed her bill of complaint on January 25, 1916, praying for a divorce from the respondent, and alleging that complainant "without support from him has lived separate and apart from the bed and board of the said R. L. Barrington since, to wit, January 12, 1911, same being for five years next preceding the filing of this bill, and she has bona fide resided in this state during all of said period."

Numerous grounds of demurrer are assigned to the bill of complaint, which, however,

present but two essential objections to its maintenance: (1) The statute is not retrospective in its operation, but requires a separation by the wife from the husband for five years from ·and after the date of its enactment; and (2) the statute is unconstitutional because it denies to the husband due process of law, and also the equal protection of the law.

[1] Remedial statutes—those which do not create, enlarge, diminish, or destroy vested rights—are, favored by the courts, and their retrospective operation is not obnoxious to the spirit and policy of the law.

[2] But a statute which gives a new legal effect to conduct or conditions occurring or existing prior to its enactment, thereby imposing upon any person unanticipated disabilities or alterations of legal status, is retrospective in a sense which is odious to the law, and, as to such operation, is strongly disfavored by the courts,·even though it does not offend the Constitution by impairing the obligation of a contract or by creating a crime or punishment ex post facto. This disfavor has everywhere found expression in a rigorous rule of construction which denies retroactive effect to such a statute unless by its express terms, or by unmistakable implication, the Legislature must have so intended. Our own court has spoken many times upon this subject:

"The future is the appropriate field of legislation; and a statute is never allowed to have a retrospective operation, unless clearly so expressed, or unless such implication must be made to give effect to the manifest intent of the Legislature." Philips v. Gray, 1 Ala. 226.

"It is a rule of construction, founded on the principles of general jurisprudence, that a statute is not to have a retrospective effect beyond the time of its enactment. * * * 'The very essence of a new law is a rule for future cases.'" Boyce v. Holmes, 2 Ala. 54, 56.

"A construction which gives to a statute a retrospective effect has always been esteemed odious, and will never be indulged unless the language employed requires it. Such statutes are justly considered as violative of every sound principle. Dwar. on Stat. 681." Kidd v. Montague, 19 Ala. 619, 625.

"Courts, on the plainest considerations of justice, are averse to the retroactive operation of statutes, and confine them to cases arising after their passage, unless the words of the statute, or a clear legislative intent deducible from them, compels an application to the past as well as the future." Eskridge v. Ditmars, 51 Ala. 245, 250.

"Such statutes are offensive to the principles of sound and just legislation, and it is of these the authorities to· which we have been referred, use the term 'odious,' and other epithets expressive of judicial opprobrium." Ex parte Buckley, 53 Ala. 42. 55.

"Inasmuch as legislation of this character is very liable to abuse, and frequently oppressive in its effects, the courts have uniformly adopted the rule that statutes should generally be construed to operate in the future only, unless the legislative intent appears clear from their terms that they are to have a retrospective operation. * * * The rule is often stated to be that such a construction, when it operates to take away vested rights, whether legal or equitable, is not to be admitted, 'unless the implication is so clear as to be equivalent to an explicit declaration.' Osborn v. Nicholson, 13 Wall. 654, 662, 20 L. Ed. 689." Warten v. Matthews, 80 Ala. 429, 430.

"The question is, not the legislative power, but whether it was the intent, that the act shall be retrospective. On principles of general jurisprudence, a statute is not to have effect beyond the time of its enactment; and to give it retroactive operation, there must be found therein clear and indisputable expressions of such legislative design. When the words of a statute can be construed as intended to be prospective only, they will not be so construed as to give retroactive effect. The courts will 'always construe statutes as prospective and not retrospective, unless constrained to the contrary course by the rigor of the phraseology.'" New Eng. Mort. Sec. Co. v. Bd. Rev., 81 Ala. 110, 111, 1 South. 30, 31.

These expressions are,· indeed, but legal platitudes, and we quote them, not to further establish a rule of elementary law, but to illustrate its perennial persistence in undiminished vigor and favor.

[3] The legislative act here involved is not remedial in character, but gives legal effect to marital conduct and relations, by converting any complete separation between husband and wife for five years next before the filing of the bill of complaint, into an authorized ground of divorce in favor of the wife, if she has so lived without support from him. It falls fairly within the class of acts whose retrospective operation is so strongly disfavored by the law, and so consistently reprobated by the courts. To it we must therefore apply in its fullest vigor the canon of construction we are discussing, and our inquiry must be, Does the rigor of its language require that it be given retrospective operation? that is, in this case, that it shall give a new legal effect to past marital conduct, so that a pre-existent period of separation, four years and eight months, shall so supplement a subsequent period of four months as to complete the required five-year period within four months after the approval of the act. The amended statute authorizes a divorce "in favor of the wife when * * * the wife without support from him has lived separate and apart from." It is certainly true that this language is broad enough, prima facie, to embrace any suit for divorce that might be thereafter filed, and does not exclude from operation to that end a statutory term of years begun howsoever long before the enactment of the law. But we cannot say that it necessarily or clearly includes such a case. The use of the verb in the present perfect tense is appropriate, and perhaps necessary to express the idea of completion merely—the perfection of the designated term in the abstract, rather than the mere lapse of time already passed in particular, cases. Such a use of the perfect tense of verbs is not only appropriate but common.

[4] It may be that courts should indulge the presumption that the draftsmen of legislative acts have used language with the nicest perception of its shadings of grammatical meaning, but such a presumption is, at best,

but weak and inconclusive; "and so (as remarked by Mr. Endlich), as it has been seen that the strict grammatical sense of the language used by the Legislature may give way to a construction required by other rules of interpretation, words apparently importing a retroactive effect will yet, in the absence of other reasons supporting such literal construction, be so construed as to produce a prospective operation." Endlich on 'Tit. of Stat. § 272.

[5] We cannot escape the conclusion that a just application of the rule of construction to this act must deny any legislative intendment of a retrospective operation. Counsel for complainant rely very strongly on the case of Cole v. Cole, 27 Wis. 531. There an existing divorce statute was amended by adding:

"Whenever the husband and wife shall have voluntarily lived entirely separate for the space of five years next preceding application for divorce, the same may be granted on the petition of either party."

Said the court:

"This law establishes a new ground of divorce, and is based upon the principle that where husband and wife have voluntarily lived entirely separate for a period of five years, the interest of society and public morality, as well as the good of the parties themselves, will be best promoted by a dissolution of the marriage relation. There is nothing in the language of this statute which would seem to require that the five years' separation must have occurred after the law took effect, and we must presume that it was intended to apply to present separations as well as future ones."

That decision supports the contention of complainant in this case, but its value as an authority is destroyed by reason of the fact that the Wisconsin court applied a rule of construction which is the exact antithesis of ours, viz: retrospective operation is there presumed because it is not forbidden by the language of the act itself. In Jones v. Jones, 2 Overt. (Tenn.) 2, 5 Am. Dec. 645, following a statement of marital offenses, the act authorized a divorce "if any person *hath been* or *shall be* injured in any of the ways above mentioned" (italics supplied), and it was held that this showed a clear legislative intention to include, as grounds for divorce, conduct that occurred before the passage of the act. But if the double and sharply contrasted form of expression had not been used, that decision could not be justified on principle.

We are referred also to texts and cases which state and apply what seems at first 'sight to be a material qualification of the general rule against the retrospective operation of statutes, viz. that "a statute is not retrospective, in the sense under consideration, because a part of the requisites for its action is drawn from a time antecedent to its passing." Endlich on Int. of Stat. § 280; Johnston v. U. S., 17 Ct. Cl. 157; In Re Scott (D. C.) 126 Fed. 984; Queen v. St. Mary, 12 Q. B. 127. But our examination of these cases, and those cited by Mr. Endlich, does not indicate any application of the qualification quoted to other than a pre-existent status, out of which, or in relation to which, the conduct dealt with by the statute prospectively grew or was practiced; or than to statutes manifestly remedial in their character and purpose. Our discussion of this branch of the subject would be incomplete without some notice of two other texts, which seem to give some support to the opposing view:

"Where statutory relief is prescribed for a cause which is continuous in its nature, as a statute of limitations, or desertion for a certain time as ground for divorce, if the cause continues after the statute goes into effect, the future continuance of the cause may be supplemented by the time it was continuous immediately before the act was passed, to constitute the statutory period." 2 Lewis' Suth. Stat. Const. (2d Ed.) § 674.

The cases cited by the author do not support the text, but rather refute it, so far as divorce statutes are concerned. The single cited case which may seem to support the general proposition of completing a required statutory period by the use of "the time for which the cause was continuous immediately before the act was passed," is Skillman v. Chicago, etc., Ry. Co., 78 Iowa, 404, 43 N. W. 275, 16 Am. St. Rep. 452. There an Iowa statute (Code, § 1260, as amended by Acts 18th Gen. Assem. c. 15) provided that:

"In any case where the construction of a railway has been commenced by any corporation or person, and work on the same has ceased, and has not been, in good faith, resumed by any corporation or person for a period of eight years, the land and the title thereto, shall revert to the owner," etc.

The respondent railroad company, or rather its predecessor, had begun the construction of its road and abandoned the right of way nine years before the passage of the statute, and the work was resumed three years thereafter. The court said:

"The language of the statute plainly applies to the case of railroads which had been commenced and abandoned before the enactment of the statute, and whereon work was resumed within a period of less than eight years thereafter. The interpretation that the period of eight years must have run after the enactment of the statute is in conflict with the construction demanded by the grammatical rules of our language."

No account is taken of the general considerations which govern courts in such cases, and the conclusion is not in accord with the accepted canon of construction. No doubt, however, the court adopted the liberal construction it did because it regarded the statute as remedial and merely declaratory of the legal result of a forfeiture already completed by the mere act of abandonment, as indicated by the latter part of the opinion. Mr. Bishop, after reviewing some of the older cases, including Cole v. Cole, supra, concludes:

"It being the primary object of the divorce suit to regulate the order of society, and purify the fountains of morality, while still as between the parties it is a private controversy—and the proceeding being in the highest remedial, so that the spirit and reason of the divorce statutes

should be pre-eminently the guides to their interpretation—we should, in all cases where the legislative intent is not plain in the words, prefer the construction which makes the statute applicable to past offenses, the same as to future." 1 Bish. on Mar. and Div. § 102.

But this view, as shown by the context (section 101), is founded solely on the theory of a delictum by the spouse against whom the divorce is authorized—i. e., a guilty breach of marital duty. Hence, conceding the merit of the author's opinion, it would not embrace a statute like that one now under consideration, for the reason that the divorce it authorizes in favor of the wife is not predicated on any delictum or marital breach by the husband. We find no case in which past conduct has been given future legal effect in cases like the present, in derogation of the general rule of construction to which we adhere, except Cole v. Cole, 27 Wis. 531.

[6] On the other hand, as remarked by the Supreme Court of Massachusetts in Burt v. Burt, 168 Mass. 207, 46 N. E. 624: "Divorce statutes generally have been held not to be retrospective"—citing Sherburne v. Sherburne, 6 Greenl. (Me.) 210; Giles v. Giles, 22 Minn. 348; McCraney v. McCraney, 5 Iowa, 232, 68 Am. Dec. 702; Buckholts v. Buckholts, 24 Ga. 243; Carson v. Carson, 40 Miss. 349. See, also, to the same effect, Tufts v. Tufts, 8 Utah, 142, 30 Pac. 309, 16 L. R. A. 482.

In Carson v. Carson, supra, an act of the Legislature (Acts 1860, p. 202) authorized a divorce "in all cases where parties have, prior to the passage of this act, lived separate and apart for the period of four years" (with certain qualifications). The court reluctantly accorded to it the retrospective operation expressly declared by its terms, but pertinently observed:

"Such legislation cannot be too strongly condemned as unwise, impolitic, and unjust. * * * It is only obnoxious to the objection that it is wholly retrospective in its operation. * * * Courts of justice always express the strongest disapprobation of such legislation, and will never be persuaded that the Legislature intends to give a retroactive effect to its enactments, without the clearest and most positive expression of such a purpose. But where an act is, like the present, retrospective only, and purports to operate alone upon acts that have already passed, and has no prospective operation whatever, there is no room left for construction, and courts are obliged, however reluctantly, to give effect to the intention of the framers."

We are, upon these considerations, constrained to hold that the statute in question authorizes the divorce here sought only upon the lapse of five years from and after the date of its enactment—September 10, 1915.

It follows that the demurrer to the bill of complaint on this ground should have been sustained, and the chancellor erred in overruling it. In accordance with our practice in such cases, we pretermit, as unnecessary, any decision upon the constitutionality of the act. Let the decree of the chancery court be reversed, and a decree here entered sustaining the demurrer on the ground stated above.

Reversed, rendered, and remanded. All the Justices concur, except McCLELLAN, J., who dissents.

McCLELLAN, J. (dissenting). The appellee (complainant below) states in her bill a good ground for her divorce from the appellant under the act to be quoted: Provided, first, the prescribed period of five years (next preceding the filing of the bill) may consist of time expiring before the law was enacted and of time expiring after its enactment; and, second, the act is not constitutionally invalid. The act reads:

"That section 3795 of the Code of Alabama of 1907 be and the same is hereby amended so as to read as follows: 3795 (1487) (2324) (2687) (3353) (1963). To wife in case of cruelty or nonsupport by husband. In favor of the wife when the husband has committed actual violence on her person, attended with danger to life or health, or when from his conduct there is reasonable apprehension of such violence, *or when the wife without support from him has lived separate and apart from the bed and board of the husband for five years next preceding the filing of the bill, and she has bona fide resided in this state during all of said period.*" [Italics supplied.]

All other provisions of this act than that italicized are reproductions of the provisions of Code, § 3795, enacted more than 30 years ago. Cooley on Constitutional Limitations, pp. 154, 155, says:

"The Legislature has the same full control over the status of husband and wife which it possesses over the other domestic relations, and may permit or prohibit it, according to its own views of what is for the interest of the parties or the good of the public. * * * Marriage is not a contract, but a status; the parties cannot have vested rights of property in a domestic relation; therefore the legislative act does not come under condemnation as depriving parties of rights contrary to the law of the land, but, as in other cases within the scope of the legislative authority, the legislative will must be regarded as sufficient reason for the rule which it promulgates."

"The power of the Legislature over the subject of marriage as a civil status and its dissolution is unlimited and supreme except as restricted by the Constitution." 9 R. C. L. pp. 245, 246, § 5, and notes thereto; also pages 270, 271, and notes; Maynard v. Hill, 125 U. S. 190, 8 Sup. Ct. 723, 31 L. Ed. 654; Green v. State, 58 Ala. 190, 29 Am. Rep. 7, 14 Cyc. pp. 574, 575; Cooley, p. 403. In the formation of the Union the states did not surrender their inherent rights to control the status of marriage, the relation of marriage. Green v. State, 58 Ala. 190, 29 Am. Rep. 739. The limitation on legislative power and authority touching the marriage relation in the Constitution of this state is that a divorce may not be granted by special, private, or local law. Const. 1901, § 104, subd. 1; Jones v. Jones, 95 Ala. 443, 11 South. 11, 18 L. R. A. 95. There is no restriction in our Constitution upon the legislative power and authority to construct and to define the grounds upon which divorces may be granted by the

courts of this state. That the act under consideration is not violative of any restrictive provision of the Constitution is clear beyond cavil, since, as Cooley and all authorities affirm, the parties to the marriage relation have no vested right in it in qualification of, or superior to, the will of the Legislature in defining the grounds upon which a dissolution of the relation may be effected by the courts. The policy, wisdom, or expediency of enactments perfected by the lawmakers are not matters for consideration, review, or revision in this court. The other question—the first stated above—involves only a construction of the act; the Legislature having the power and authority to prescribe causes for divorce without reference to when, in respect of time, they occur or during what period they prevailed.

Prior to the passage of the act in question our statutes prescribed this ground, among others, for the dissolution of the marriage relation at the instance of the "aggrieved party": "For voluntary abandonment from bed and board for two years next preceding the filing of the bill." The act under judgment introduces into our divorce laws a character of separation that effects to clothe the wife abandoning the husband with the right to divorce under the conditions prescribed in the act. The abandonment thus made a ground of divorce in favor of the wife is not predicated of any wrongful or other cause, afforded by the husband, inducing her to abandon the husband. It implies or imputes no wrong to him as a condition to the creation of this cause of divorce. Hence the existence of this ground for divorce, in favor of the wife, does not invoke considerations that are present in those causes of or for divorce which are based upon fault, delictum, on the part of him or her from whom the complainant, the actor in the proceeding, would be divorced, such as adultery, incurable physical incapacity to enter the marriage state, imprisonment for two years under sentence for seven years, the commission of crime against nature, habitual drunkenness, cruelty by the husband, and in favor of the husband when the wife was pregnant at the time of marriage without his knowledge or agency. This fact, this reason and effect of the act, alone suffices, it seems to me, to remove any possible reason for judicial hesitancy or reluctance that is supposed to arise or be inspired in the judicial judgment in respect of the interpretation of laws that are thought to be retrospective (not retroactive) in their contemplation, since invariably such judicial disfavor (where it has just application or recourse) is predicated of the view that the person adversely affected would have thereby visited upon his conduct or his right a condemnatory effect in consequence of the backward looking law. By the pertinent provision of this act, no reflection even, much less affirmation of wrongful act or omission, is cast upon the husband away from whom the wife, a bona fide resident of Alabama, has lived, unsupported, for five continuous years next preceding the filing of her bill.

In the construction and interpretation of statutes it is always important, often vitally so, to ascertain and to determine to what class of statutes, whether remedial, penal, or otherwise, the statute belongs, and this for the reason that rules of construction applicable to one class of statutes are not applicable to another. When it is considered that the dissolution of the marriage relation invades or violates no vested right of the parties thereto, and when it is considered that divorce laws are alone referable to, and justifiable by, the legislative authority to enact toward what the lawmakers conceive to be the public welfare, it is quite clear that such laws belong to the class called remedial. "A remedial statute has for its object, * * * the redress of some existing grievance or the introduction of some regulation or proceeding conducive to public good. * * *" Van Hook v. Whitlock, 2 Edw. Ch. (N. Y.) 304, 310, affirmed in 7 Paige (N. Y.) 373; 26 Wend. (N. Y.) 43, 37 Am. Dec. 246. Those are remedial statutes which are directed to the remedy of public evils. 36 Cyc. pp. 1173, 1174. At section 102 of 1 Bish. on Divorce, the learned author affirms in the strongest terms the view—premised upon the fact that the primary object of the divorce suit is to regulate and to purify society and the fountains of morality—that the proceeding is in the highest degree remedial. This court, in Green v. State, 58 Ala. 190, 193, 194, 29 Am. Rep. 739, through approving quotation taken from Maguire v. Maguire, 7 Dana (Ky.) 181, accepted the conclusion that the power exercised by a state over the marriage relation and its dissolution was "remedial and conservative." Nelson, at section 12 of his work on Divorce, says:

"Statutes relating to divorce should receive a liberal and equitable construction. The legislative intent should be ascertained and carried out in a manner calculated to afford the intended remedy. Such statutes are not penal and should not be given a strict construction. They are to be construed with reference to the apparent policy of the Legislature as gathered from the entire act. To execute this policy, the meaning of the statute may be contracted or expended from the ordinary or literal meaning of the terms. The more extensive of the two meanings may be adopted even where a statute must receive a strict construction."

But the value and weight of these manifestly sound statements of this author are neutralized, so far as his work is concerned, by this contradictory observation later in the same section (12):

"But aside from the sections of the statute relating to the * * * causes for divorce, the divorce statutes are remedial and should receive a liberal construction."

This inconsistency—and there are other manifestations of it in section 12—may arise from the author's confusion of interpretation, construction of such statutes with the admin-

istration thereof in concrete cases. On this theory only, so far as I am given to see, can that author's statements be reconciled. If, as he says latterly, the parts of such statutes "relating to the jurisdiction of the court and the causes for divorce" are to be strictly construed, one may well inquire what is left of such statutes to which to apply the rule of liberal construction—to advance the remedy of the evil—so well stated by the author in the opening sentences of section 12. It will not do to visit upon such acts the personal notions of judges as to the wisdom of allowing divorces. The courts can only administer, never make, the law. If the lawmakers, through whom alone the policy of the state on the subject of divorce can be expressed, intended to "discourage divorce," as indeed they may do without constitutional restraint, they certainly would not set forth that purpose by providing numerous grounds of divorce as they have done in Alabama. Since such statutes (aside from the matter of jurisdiction of a particular case) are, in fact, remedial, not at all penal, they, at the very least, deserve a fair construction that is not affected with disfavor, suspicion, or distrust; a construction that looks to the ascertainment of the legislative intent and the faithful execution of it, when ascertained, to accomplish the intended remedy of the evil. 14 Cyc. 578. No harsher rule of construction of such statutes can, in my judgment, be soundly justified.

The lawmakers being free in this state, constitutionally and otherwise, to construct a ground for divorce to be granted upon a fact, act, or condition occurring or existing, in whole or in part, before the law's enactment (9 R. C. L. § 30, and notes, and authorities, supra; see Leahart v. Deedmeyer, 158 Ala. 295, 298, 48 South. 371), it remains to consider whether the Legislature intended that the five-year period of separation defined in the act should commence to run after the passage of the act, or ·that the period provided might be constituted of time elapsing before its passage; the period prescribed being continuous and next preceding the filing of the bill for divorce on that ground.

It is asserted that to accord the act, in this respect, an effect to allow the separation period elapsing before the act's passage to afford a partial basis for the application of the act's stipulation in that regard is to read it to a retrospective effect; an effect that contradicts the usual intent that laws should be, are intended to be, prospective only in their operation. That is the prima facie intendment; that is the presumption in the absence of a manifestation of a legislative intent to the contrary; when the proposed construction of the act is to make it retrospective or retroactive. In my opinion, conforming to the principle underlying the thoroughly considered ruling of this court in State ex rel. v. Teasley, Judge, 194 Ala. 574, 69 South.

728, it is a mistake to relegate this act to the category of retrospective or retroactive laws, even if a period of separation elapsing before its passage is held to be properly a part of the five-year continuous period prescribed by the act as a ground for divorce. The principle recognized and actually applied in State v. Teasley, supra, was this: That a law, to enact which the Legislature is competent, was not retroactive; retrospective; was not ex post facto; where it establishes a rule for future observance upon a fact, act, or condition which occurred, transpired, or existed before the law was enacted. The principle there applied was the principle upon which this court proceeded in Washington v. State, 75 Ala. 582, 51 Am. Rep. 479, and on which the Supreme Court of the United States proceeded in Hawker v. New York, 170 U. S. 189, 18 Sup. Ct. 573, 42 L. Ed. 1002, where our decision in Washington's Case is approvingly cited. The like doctrine is thus stated in Endlich on the Int. of Stat. § 280, p. 377:

"But a statute is not retrospective, in the sense under consideration [i. e., offensive to constitutional provisions against retroactive laws], because a part of the requisites for its action is drawn from a time antecedent to its passing."

The section quoted contains illuminating illustrations of the doctrine. In Johnston Case, 17 Ct. Cl. 157, 171, the Court of Claims of the United States had the same doctrine in mind when it said:

"A statute does not operate retrospectively when it is made to apply to future transactions, merely because those transactions have relation to and are founded upon antecedent events; or, as was said by Denman, Ch. J., in Reg. v. Whitechapel, 12 Q. B., 127, 'because a part of the requisites for its action is drawn from time antecedent to its passing.'"

Judge Bradford, writing in Re Scott (D. C.) 126 Fed. 981, 984, in addition to quoting from Endlich, said:

"A statute is not necessarily retroactive or retrospective because its operation in a given case may be dependent upon an occurrence anterior to its passage."

The opinion of Lord Denman, to which reference has been made, was rendered in Regina v. St. Mary Parish, 64 Eng. Com. Law Rep. 118, 125, 126. It confirms the text in Endlich and aptly illustrates the principle's application to a statute of the type under consideration. The case of Locke v. New Orleans, 4 Wall. 172, 18 L. Ed. 334, is another illustration of the doctrine, even in a case where the levy of taxes on property assessed previous to the enactment was made the subject of the rule established by the subsequent enactment. Giving attention to a tax statute of a similar nature to that considered in Locke's Case, supra, the Louisiana court, in City of N. O. v. Railroad Co., 35 La. Ann. 679, said this in the headnote, in further illustration of this doctrine:

"The sections assailed are not retroactive, though retrospective. They refer to the past, but provide for a future remedy."

Other applications of the doctrine of the cases and the text noted before may be found in Miller v. Moore, 1 E. D. Smith (N. Y.) 739; Hart v. Leete, 104 Mo. 315, 15 S. W. 976; Litson v. Smith, 68 Mo. App. 397, 402, 403.

Now what, in the particular here involved, does the statute effect? In the first place, whatever its construction, it does not violate any vested right, since, as is universally accepted, neither a husband nor a wife can have any vested right in the status of marriage. In the next place, it is not penal in any sense. Not being penal and not affecting any vested right, it is, necessarily, remedial. The object sought to be effected is well stated in Cole v. Cole, 27 Wis. 531. It was therein said:

"It is further objected that the evidence shows that the parties had lived separate only a little more than three years after chapter 37, Laws 1866, took effect; and it is said the separation must continue for five years after the passage of that act. Our construction of the law of 1866 has been, that it applied to separations which began before its passage, and which continued until the application for divorce was made. Phillips v. Phillips, 22 Wis. 256. This law establishes a new ground of divorce, and is based upon the principle that where husband and wife have voluntarily lived entirely separate for a period of five years, the interest of society and public morality, as well as the good of the parties themselves, will be best promoted by a dissolution of the marriage relation."

Bishop, at section 102 of volume 1, concludes to a like effect. The granting of a dissolution of the marriage relation, on bill filed by the wife, is the purpose the lawmakers undertook to effect. This dissolution of the relation could only be accomplished, under this act, after the law's enactment. Its operation, to the end it was intended to subserve, was prospective only, just as was the case in State ex rel. v. Teasley, supra. It did not and does not purport, in any event, to dissolve the relation antecedent to the law's enactment. Only "the requisites," to quote Lord Denman, "for its action is drawn from time antecedent to its passing." It provides that under defined circumstances a result, an effect only possible of existence after its enactment shall entitle the wife to a dissolution of the relation. It is, hence, not a retrospective or retroactive law. To affirm otherwise, even when pretermitting the plain terms of the act, would be to ignore the rule thus finely stated by this court in Hoffman v. Hoffman, 26 Ala. 535, 545:

"Whenever a statute is levelled against an abuse, * * * every reason exists for its most liberal application; and in such cases, it may fairly be presumed that it was the intention of the Legislature that the boon of the statute should be extended to every case which its words could properly include."

This pronouncement was recently reaffirmed by this court in Reynolds v. Love, 191 Ala. 218, 223, 224, 68 South. 27. The laws involved in the Hoffman and Love-Reynolds Cases presented, as is apparent, an appeal for the application of the rule quoted far less strong than does the statute here under

200 ALA.—21

judgment. There the law concerned property rights, while here the law's controlling motive and object could only have been to promote and conserve the public welfare; a motive and a purpose the courts have no power or authority to censor or to revise. When this act is considered in its true class, viz. as a remedial enactment, the soundness of the apt authority afforded by Cole v. Cole, 27 Wis. 531, is demonstrated. Following the language before quoted from the Cole Case, it was appropriately said:

"There is nothing in the language of this statute [i. e., similar to the one under consideration] which would seem to require that the five years' separation must have occurred after the law took effect, and we must presume that it was intended to apply to present separations as well as future ones."

Reference to decisions delivered by the Wisconsin court, both before and after it decided the Cole Case, supra, discloses that the various rules obtaining in Wisconsin for the construction of statutes are the same as those recognized and applied (on proper occasion) in Alabama. So the influence to be accorded the decision in Cole's Case cannot be even modified on the notion that that court observes rules of construction opposed to those recognized in this jurisdiction.

But the application of this act to separations existing when it was enacted was not left to implication or to doubt by the lawmakers. The act expressly provides that a dissolution of the marriage in favor of the wife may be effected when the wife "has lived separate and apart" from the husband, without support from him, "for five years next preceding the filing of the bill and who has bona fide resided in this state during all of said period." (Italics supplied.) Grammatically considered, the verbs "has lived" and "has resided" are used in the present perfect tense. Unless its effect or operation is postponed either by the Constitution or the enactment itself, a law speaks as of the time, the date it becomes law. The employment of that tense "expresses what has taken place, within some period of time not fully past, as 'I have seen him to-day.'" Brown's Grammar, etc., 340. Certainly it cannot be assumed or presumed that the Legislature was ignorant of the fact that the verbs used in this act had the meaning and effect, as vehicles of expression, so commonly accorded to them. In New Eng. Mort. Co. v. Board of Revenue, etc., 81 Ala. 110, 112, 1 South. 30, where the question was one of construction of a tax statute, this court said, in effect, that, if the enactment had used the words "or have been" instead of the verb "are" (is), the case would have presented a very different means for the expression of the legislative intent. Indeed, it is clearly inferable from the opinion that a different conclusion would have there prevailed. The lawmakers have employed clear terms, through the use of verbs that denote reference to past conditions, to express-

ly import into the act a purpose to predicate a rule for future action upon conditions taking place, at least in part, before the law was passed. Again, the definition with respect to the period of separation has manifest qualifying reference to the filing of the bill and there is no expression otherwise restricting the right to file the bill. Again, to read the act as being inapplicable to separations pending when the law was enacted, is to introduce into the act, without warrant, as I see it, the word "hereafter," or some similar term, in qualification of the meaning plainly imported by the verbs employed, and thereby to postpone for five years, from the date of enactment, the actual operation of the law. It is wholly unreasonable to think that the lawmakers so intended. In my opinion, the act means what it clearly says; and so I would accord it the effect of vindicating the complainant's (appellee's) bill.

I therefore dissent from the judgment of reversal.

SOMERVILLE, J. (concurring). Speaking for myself alone, I fully agree with the views expressed by Justice McCLELLAN as to the nature of the marriage relation, and its subjection to legislative control, whether as to its creation or dissolution. I agree also that if the statute here under consideration can be justly regarded as a remedial provision for the redress of an injury to individuals, or for the suppression of a public evil, its retrospective operation would not be odious, and the opposing canon of construction would not be applied in the ascertainment of legislative intent.

In the strict sense of the word, a remedial statute is one which merely provides a remedy for the enforcement of an existing right. In its broader sense, any statute is remedial which aims at the suppression of that which is evil, and the conservation of that which is good. "Such statutes," said Chief Justice Brickell, in the leading case of Ex parte Buckley, 53 Ala. 42, 55, "are intended to remedy a mischief, promote public justice, correct innocent mistakes into which parties may have fallen, cure irregularities, or give effect to the acts and contracts of individuals fairly done and made." In the same connection he says:

"The statutes excluded from judicial favor, and subjected to this strictness of judicial construction, statutes which may be properly denominated retrospective, are such as take away or impair vested rights, acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability, in respect to transactions or considerations already past." 53 Ala. 54.

In the light of this distinction it was held in that case that a change in the existing law by an "act to secure good and sufficient sureties on the bonds of county officials" was strictly remedial in its nature, promotive of public justice and individual right, and was properly applicable to existing officers who had already filed their bonds under the former statute. On the same principle, it was held in Washington v. State, 75 Ala. 582, 51 Am. Rep. 479, that a constitutional provision (section 3, art. 8, Const. 1875) excluding from registration, voting, or officeholding "those who shall have been convicted of" a felonious crime, applied to crimes committed before as well as after its adoption. Said the court:

"The manifest purpose is to preserve the purity of the ballot box, which is the only sure foundation of republican liberty, and which needs protection against the invasion of corruption, just as much as against that of ignorance, incapacity, or tyranny."

And in conclusion:

"These reasons induce us to the conclusion that the framers of the Constitution intended to disqualify from participation in the elective franchise all persons previously convicted of larceny, and other crimes specified, as well as those convicted subsequently to the date of the adoption of that instrument. They both alike come within the letter, as well as the spirit, of its provisions touching the subject of suffrage and elections. The mischief to be remedied is not of greater magnitude in the one case than in the other. And, as all the provisions of a Constitution must go into effect as a whole, and at the time of its final adoption, unless otherwise declared, no reason appears to us why the operation of the one under consideration should be postponed by judicial construction."

So in Hawker v. New York, 170 U. S. 189, 18 Sup. Ct. 573, 42 L. Ed. 1002, it was held that an act providing that "any person who, after conviction of a felony, shall attempt to practice medicine, etc., shall be guilty of a misdemeanor," was, though applicable to previous convictions, not unconstitutional as an ex post facto law. In neither of the last-cited cases was any question raised as to the retrospective application of the inhibitory language, which was perfectly clear. But, unless expressly limited to future convictions, its remedial policy would manifestly have justified such retrospection. In State ex rel. Brassell v. Teasley, 194 Ala. 574, 69 South. 723, it was held by a divided court that the act of February 5, 1915 (Sess. Acts 1915, p. 52), providing that "no person shall be eligible to the office of president or member of the board of commissioners * * * who shall, either by election or appointment, have held the office of president or member of the board of commissioners of any such city, three consecutive years, within the four years immediately preceding the date of the election," etc., was a mere prescription of qualification for election to office thereafter, did not interfere with vested rights as applied to the future disqualification of the then incumbents, and, by an express provision of the act itself, operated immediately to that effect.

This case would be closely analogous to the Teasley Case, if we had here a statute which prescribed as a disqualifying obstacle to future marriages the fact that either party had ever been married before. Such an act, it will be observed, would not interfere with the continuation of an existing relation-

ship, recognized by law as both exclusive and valuable. It is just this interference with existing rights which have not been morally forfeited by any marital dereliction or disability, which courts do not impute to the legislative intention, unless that purpose is made conclusively clear. It is difficult to find in any of the foregoing cases a basis even for present comparison, much less for adverse authority. A reading of the several opinions will disclose their fundamental difference.

I further agree with Justice McCLELLAN in the judicial principle that the power of the Legislature over marriage and divorce is as to its origin and basis "remedial and conservative." Green v. State, 58 Ala. 190, 193, 29 Am. Rep. 739. I think, however, it must be conceded that the exercise of the power may be, and in some cases has been, injurious and destructive. Whether legislative action in providing for the dissolution of marriage at the suit of either party is remedial and conservative in the sense defined by Chief Justice Brickell, and therefore favored in its interpretation and construction by the court, must depend in each case upon the character and purpose of the act, and this is to be considered and determined by the court. If, for example, the Legislature should revive for modern use the old Mosaic law that a man could put away his wife at his pleasure by simply giving her his declaration of divorcement (Deut. 24:1), I apprehend that no court would regard such an act as remedial in the favored sense, and that its application to existing wives would be abhorrent to the judicial mind, so much so that that construction would be afforded only if the language of the act made retrospection compulsory.

I further agree with Justice McCLELLAN in the proposition that matrimonial rights are not vested rights in any technical or constitutional sense. But I think, nevertheless, that they are legal and moral rights in the highest sense of the word; perhaps, indeed, the most sacred and important of any that are recognized by law and by society. For their acquisition and enjoyment the parties must make mutual sacrifice and surrender. For any injury to the rights of consortium and service the law prescribes a liberal remedy against the offender. I think it must logically follow that no law which, by dissolution of the marriage, destroys matrimonial rights already acquired, in favor of one party, without any fault or disability on the part of the other, can be accorded favor as a remedial law, however happily it may operate in some individual cases; and none of the authorities so hold. And so far as the basis of its operation against either spouse may be innocent conduct already past, the canon of construction everywhere applied is that such operation is not intended unless the rigor of its language so requires.

In the original opinion it was conceded that, so far as the language of the opinion went, the Wisconsin case of Cole v. Cole supported appellant's contention. That concession, however, was too broad, or at least it might be misleading. For it is obvious that the Wisconsin court was in fact dealing with a statute vitally different from ours, in that the divorce there authorized was based upon a separation that was voluntary as to both parties, that is, each party had voluntarily renounced the marital association, and thereby morally forfeited all rights thereunder. The real question, therefore, might well have been regarded as one involving primarily the interests only of society and the state. If that was the conclusion, and it was further supposed that those interests would be beneficially served by dissolving a dead union, then the retroactive construction of the statute might be justified, without in any wise impugning the conclusion reached in the present case.

For the purposes of this discussion, we are manifestly compelled to deal with this act according to its general scope, and not upon the assumption, however true it might be, of its possibly just and wholesome operation in the present case. Clear judicial reasoning requires a clear understanding of judicial terminology; and where, as here, important terms have variant meanings, the undiscriminating use of precedents is apt to lead to confusion, if not to error.

MAYFIELD, J. (concurring). I concur in the conclusion, and in nearly all of the opinion of Mr. Justice SOMERVILLE. I am not yet willing to subscribe to the doctrine that the Legislature could have made the statute in question retrospective, and have given it retroactive operation and effect. The doctrine is so dangerous, and would be so far-reaching in its effect, that I am not now willing to commit myself to it, even by dicta.

It is the province of the Legislature to say what the law shall be in the future, but not what it is at present, nor what it was in the past. This is a judicial function, under the law of this state. The day before the Legislature passed the bill in question, the complainant had no cause of action against this respondent, for a divorce, on the ground alleged in her bill. Prior to that date, it is conceded by all, the facts averred in her bill would have stated no cause of action against this respondent, and would have constituted no legal grounds for dissolving and annulling the valid and binding contract of marriage existing between them. Can the Legislature, without any fault on the part of respondent, dissolve and annul that contract in so far as the complainant is concerned, and yet hold respondent bound thereby? It is conceded by all that the Legislature could not have done so, if the effect of the bill or statute had been limited to this complainant and respondent

because section 104 of the Constitution clearly prohibits the passage of such bills. This court also held, in the case of Jones v. Jones, 95 Ala. 443, 11 South. 11, s. c. 18 L. R. A. 95, that the Legislature had no such power, even when based on the fault of one of the parties to the contract, and this was before section 104 of our present Constitution appeared, to expressly prohibit the passage of local laws as to divorces. It is true that that decision was based on section 23 of article 4 of the Constitution of 1875. It does not conclusively follow, however, that the divorce granted in Jones' Case would have been valid if it had ex proprio ' vigore divorced every husband in the state, as it attempted to divorce Dr. Jones. I am not willing now to subscribe to the doctrine that the Legislature of this state could, if it would, divorce every wife in this state from her husband, or vice versa. If the Legislature could not, by a statute, so divorce all married persons, could it, authorize the courts of the state to do so, with or without cause? Maybe it can. I am not sure that it cannot, but I am not willing to say that it can, until compelled so to do; and I do not think the courts will ever be called upon to decide the question, because there is no possibility that the Legislature will ever pass such a bill or bills as I have above indicated. I mention such conditions because it is a question solely of the power of the Legislature and the extent thereof, and not one of propriety or policy, of which I am writing; and hence only extreme cases can illustrate the extent of the power.

The history of our constitutional provisions, prior to the present Constitution (1901), on the subject of divorce, was reviewed in the case of Jones v. Jones, supra, and while the act was in that case stricken down, because local, special, or private in character, it was not held even as dicta that it would have been valid if it had been general. In a note to the report of that case in 18 L. R. A. 95, there will be found many authorities on the subject, which are in much conflict, if not in a state of anarchy, on the question whether or not a state Legislature possesses such powers.

This court in the case of Downey v. Downey, 98 Ala. 373, 13 South. 412, s. c. 21 L. R. A. 677, adverting to the decision in Jones v. Jones, supra, reiterated the fact that it was not decided in that case that the Legislature could grant a divorce. I take it that if the Legislature cannot grant a divorce, it cannot authorize a court so to do, without a cause, or except for some litigable cause; that is, there must be some issuable fact for the court to determine, else it would not be a judicial proceeding, or due process of law. Why have a lawsuit, or how can you have one, when there is nothing to litigate? Why have a defendant to a suit, or give him notice thereof, if he cannot defend, because neither the law nor the facts are controvertible or disputable? That is, that the complainant, to be entitled to relief against him, need not allege or prove any fault, neglect, or failure on his part. Is it due process of law to dissolve and annul a contract at the suit of one party thereto, without alleging or proving some fault on the part of the respondent? If one party has lived up to his contract, both in letter and in spirit, can the Legislature authorize a court to annul and dissolve it at the suit of the other? Is this due process of law?

Granting divorces is the exercise of powers and functions either legislative or judicial. If legislative, under our Constitution, then only the Legislature can exercise them, the courts cannot; if judicial, then only the courts or the judicial department of the state can exercise the powers. Assuredly, the power or function to decree divorces does not belong to both these branches of government. I take it that there never would have been a doubt on this subject but for the fact that in England Parliament has for centuries granted divorces; but this does not prove that it is the exercise of legislative powers, because Parliament—different in this from all American Legislatures, state or federal—exercises both legislative and judicial powers and functions of the English government. Our Constitution, like most all other written American Constitutions, expressly prohibits the Legislature from exercising judicial powers, and also prohibits the judicial department from exercising legislative powers. So it results that granting divorces, under the law of this state, is the exercise of powers and functions of the state government, either legislative or judicial, and that it cannot be the exercise of both classes of powers. If it be a judicial power and function, the Legislature cannot usurp it by saying that the courts shall grant divorces without cause, and without any issuable fact being alleged or proven.

The Legislature may prescribe rules under which judicial power shall be exercised, but it cannot authorize courts to proceed to judgment against, or to adjudicate upon, the rights of parties without giving them notice of the proceeding and an opportunity to defend; nor can it deprive the litigant of his rights, by retrospective legislation which makes void that which was theretofore valid, or vice versa. There are some things Legislatures cannot do. What they do must be within legislative competency. They cannot recall the past. As the greatest court said: Omnipotence itself cannot do this. In Fletcher v. Peck, 6 Cranch, 135, 3 L. Ed. 162, Marshall, C. J., said: "The past cannot be recalled by the most absolute power." Johnson. J., said in the same case: "A state does not possess the power of revoking its own grants;" and he added, that he so, held, upon "a general principle, on the reason and na-

ture of things; a principle which will impose laws even on the Deity." 6 Cranch, 143, 3 L. Ed. 162.

The Legislature can say what the law thereafter shall be, but not what it was theretofore; what it shall be to-morrow, but not what it was yesterday; that is not its province or its function. If an act is done to-day, according to law, the Legislature cannot say to-morrow that the act was unlawful. If a contract is made to-day according to law, and is therefore valid, the Legislature will have no power to-morrow to say that it was not made according to law, and is therefore void, and annul it. It can say that a contract made hereafter, as a former one was made, shall be void, but it cannot make void a contract heretofore made and executed, if valid when made, nor make valid a contract executed in the past, if it was void when made. This is not within legislative competency, and therefore needs no express constitutional inhibition. The Legislature can no more recall the past than it can make black white, or white black, or change the laws of physics or other natural laws. A state Legislature can, of course, do anything within legislative competency which is not inhibited by the state and federal Constitutions; but it needs no inhibition to prevent its doing what, in the very nature of things, according to natural or Divine law, it cannot do. The Constitution itself could not empower the Legislature to recall the past, or to change a law of physics. Why expressly inhibit the doing of a thing which cannot be done by any human power or agency, much less authorized?

I know there is abundant authority for the proposition that, while marriage is a contract, it has no obligations which cannot be impaired, and that it is therefore not within the protection of the state and federal constitutional provisions against the impairing of the obligation of contracts; that marriage is a mere status, which can be changed at the will of the lawmaking power. There are, however, abundant authorities to the contrary. See some of them cited in the case, In re Christiansen, 17 Utah, 412, 53 Pac. 1003, 41 L. R. A. 504; s. c. 70 Am. St. Rep. 794.

One of the best and most fully considered cases in all the books on the subject is that of State to Use, etc., v. Fry et al., 4 Mo. 120. The following are some of the approved and often quoted definitions of the marriage contract, some often approved and quoted by this court, and I adopt as expressing my views on the subject what was said by the Missouri court in the above-cited case:

"Blackstone says, 'Our law considers marriage in no other light than as a civil contract. * * * And taking it in this civil light the law treats it as it does all other contracts, allowing it to be good and valid in all cases where the parties at the time of making it were in the first place willing to contract, secondly, able to contract, and lastly, actually did contract in the proper forms and solemnities required by law.'

"Bacon says, 'Marriage is a compact between a man and a woman for the procreation and education of children.' He also borrows Swinburn's definition of the manner in which it must be solemnized.

"Chancellor Kent defines it to be a contract jure gentium, and consent is all that is necessary.

"Reeves, in his Domestic Relations, says, 'It is a mere civil transaction to be solemnized in such manner as the Legislature may direct.'

"Hoffman, in his Legal Outline, adopts the definition of Rutherford, who defines marriage to be 'a contract between a man and a woman, in which, by their mutual consent, each acquires a right in the person of the other for the purpose of their mutual happiness, and for the production and education of children.'"

Many other authorities might be cited, but these I presume will suffice to prove that marriage has always by the commentators on civil law and also by the courts been held and considered in the light of a civil contract. If then the conclusion be true that it has heretofore been at all times by all commentators and by the courts regarded as a civil contract, on what ground can the argument rest that it was not so regarded by the framers of the Constitution? It, at the time of framing that instrument, and for centuries before, had been treated as a contract, possessing all the attributes of other civil contracts, in its formation, conferring rights in themselves valuable and capable of being enforced in a court of justice, and with this understanding of the manner in which it was regarded by jurists, the Constitution was framed by individuals fully apprised of the fact; and can it now be supposed that it was not so understood, or that they intended to exclude it from the protection of the Constitution?

Marriage has always been held in law a valuable consideration, on which to predicate a contract either between the husband and wife or third persons; it is founded upon the consent of the contracting parties; it gives vested rights to both the person and property of each of the contracting parties, and why, then, when it possesses all these ingredients of the definition of the term "contract" before given, shall it be said not to be embraced within its provisions or spirit?

In tracing the history of the doctrine that the marriage contract is not within the protection of state and federal Constitutions, I find that the doctrine was first announced after we had written Constitutions protecting the obligation of contracts from impairment, by Marshall, C. J., as a dictum, in the famous Dartmouth College Case, 4 Wheat. 518, 4 L. Ed. 629; but the doctrine was then and there denied by other justices taking part in that decision, although it was dictum, because it was certainly new to them, and one of the justices to deny it was a no less eminent jurist than Justice Story, who has probably done more than any other judge or text-writer in shaping and defining the

common law of the American states. Of this contract he says:

"As to the case of the contract of marriage, which the argument supposes not to be within the reach of the prohibitory clause, because it is a matter of civil institution, I profess not to feel the weight of the reason. * * * In a legal sense all contracts recognized as valid in any country may be properly said to be matters of civil institution, since they obtain their obligation and construction jure loci contractus."

This doctrine has again been taken up and acceded to by Chancellor Kent in his Commentaries, and has been generally received as settling the question.

Judge Story says that it is perfectly clear that:

"Any law which enlarges, abridges, or in any manner changes the intention of the parties resulting from the contract necessarily impairs it. The manner or degree in which this change is effected can in no respect influence the conclusion, for whether the law affect the validity, the construction, the duration, the discharge or the evidence of the contract, it impairs its obligation, though it may not do so to the same extent in all the supposed cases. * * * A fortiori, a law which makes the contract wholly invalid or extinguishes it is a law impairing it. * * * If there are certain remedies existing at the time when it is made, all of which are afterwards wholly extinguished by new laws, so that there remains no means of enforcing its obligation and no redress, such an abolition of all remedies operating in præsenti is also an impairing of the obligation of such contract."

The majority opinion also concedes that if the statute in question were a strictly remedial law, as Justice McCLELLAN, in his dissent, holds it to be, it would then be construed to operate upon past as well as future acts and transactions. I am not willing to go so far. This would have been true under our Constitution of 1875, but it is not so under that of 1901. The present Constitution contains an express provision (section 95) against such retrospective legislation even as to matters which relate to the remedy only, and not to the right. While I concede, of course, that the case in hand does not fall within the letter of that provision, yet it does fall within the spirit, and the amendment shows the intent to further prevent the passage of retrospective laws, even if they do go to the remedy only, and not to the rights of the parties. Suppose the bill for divorce had been filed before the passage of the statute in question, and was then pending; then the case would be within the letter of the prohibition, and no relief could be granted, because it would both confer a right of action when none theretofore existed, and take away a defense the respondent had. The complainant would then inevitably fail, and her bill be dismissed, and the decree would be res judicata. Is it possible that she is in a better position than she would have been had she filed her bill at the earliest possible moment? So far as the letter of the Constitution is concerned, she is; but I do not believe that she is; so far as the spirit of

the Constitution is concerned. If so, then the provision can be evaded by all plaintiffs to pending actions, by dismissing the suit and at once instituting another, based on the same state of facts as in the action dismissed. In other words, the facts stated no cause of action when they were fully executed, and when the first suit was brought; but since the acts were committed, and since suit brought, the Legislature has said that those facts do constitute a cause of action. I cannot proceed with this suit because the Constitution has said in terms that the Legislature should not thus give a cause of action, or take away a defense if suit was brought; so I will just avoid the effect of it by dismissing my first suit and bringing another just like it.

If the statute in question could be made to apply to past facts and transactions, in order to divorce the wife, it could be extended to the husband as well. If it should be so extended to the husband, it would seem to more surely impair the obligation of the marriage contract, as well as to give a cause of action and take away an existing defense. It would seem, then, to go to destroy a right as well as a remedy or defense. This court has uniformly held that marriage is a civil contract as between the parties thereto, though as to society it may be a mere status. This court in a recent case, per Sayre, J., said:

"As between the immediate parties, marriage is in law a civil contract, and is everywhere held to be a valuable consideration. But it is valuable in ways differentiated from that valuable consideration which will support a contract in that ordinarily the word 'valuable' signifies that the consideration so described is pecuniary, or convertible into money. To this marriage is an exception. 1 Parsons' Contr. 468." Nelson v. Brown, etc., 164 Ala. 397, 405, 51 South. 360, 363 (137 Am. St. Rep. 61).

The right to alimony has always been held a matter of absolute right on the part of the wife, and not a matter of mere grace; yet alimony cannot be awarded after an absolute divorce is once granted. If a husband should be divorced from his wife by the Legislature, or by a court authorized to divorce him, without allegation or proof of fault on his part, then she would certainly be deprived by the Legislature of her rights acquired by the marriage contract.

I am not yet willing to hold that either the Legislature or a court can annul a marriage contract, without any breach thereof and without fault by one of the parties thereto.

THOMAS, J. (concurring). It will be conceded that marriage creates the most important relation in life, and has more to do with the morals and the civilization of a people than any other institution. It has been held to be the subject of control by Parliament in England, and by the state Legislatures in the United States. Such Legislatures have prescribed the reasonable conditions under

which parties may contract marriage, the procedure, form, or acts, essential to consummate it, the duties and obligations assumed thereby, and its present and prospective effect upon the property rights of the contracting parties; and have specified the failures of duty which shall constitute grounds for the dissolution of the union.

At the time of the adoption of the federal Constitution the states possessed full power over the subjects of marriage and divorce, and that Constitution delegated no power to the general government on this subject. This important institution of society, marriage, regulated and controlled by the public authority of the state, has been declared not to be within the provisions of the federal Constitution inhibiting the impairment of contracts, etc. Maynard v. Hill, 125 U. S. 190, 214, 8 Sup. Ct. 723, 31 L. Ed. 654; Andrews v. Andrews, 188 U. S. 14, 23 Sup. Ct. 237, 47 L. Ed. 366; Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1; Arnett v. Reade, 220 U. S. 311, 31 Sup. Ct. 425, 55 L. Ed. 477, 36 L. R. A. (N. S.) 1040; Green v. State, 58 Ala. 190, 29 Am. Rep. 739; Jones v. Jones, 95 Ala. 443, 11 South. 11, 18 L. R. A. 95.

The authority of the state to regulate the institution of marriage, however, must be referred to the police power of government; and this power may not be capriciously, unreasonably, or arbitrarily exercised. Had the Legislature prescribed, as a ground for divorce at the will of the wife, that any rich married woman, or any married woman under, or over a designated age, etc., should have a divorce, without regard to a delictum on the husband's part, upon giving a prescribed notice to him, this court would not hesitate to declare such a classification unreasonable, capricious, and arbitrary. Would not such a statute deny to these husbands a fundamental right of citizenship—a right or privilege enjoyed by other citizens, to wit, the right accorded to their wives by this capricious enactment?

The Declaration of Rights is the controlling part of the Constitution; and all the general powers of the Constitution "must be expounded," and their operation "extended or restrained," with reference thereto. In re Dorsey, 7 Port. 293. Would not such a statute deny to husbands the equal right of liberty and "the pursuit of happiness," in the enjoyment of marriage contracted under proper regulations of law? Const. § 1. The liberty thus guaranteed by the Constitution is "liberty regulated by law and the social compact.". Mr. Justice SOMERVILLE observed, of this constitutional guaranty of equality, that "in order that all men may enjoy liberty it is but the tritest truism to say that every man must renounce unbridled license," which, "if exercised without restraint [would] deprive other citizens of rights which are also and equally natural." Hardie-Tynes Mfg. Co. v. Cruise et al., 189 Ala. 66, 66

South. 657. The natural right of marriage of man and woman must be subject to the same reasonable regulation of municipal law. What becomes of that natural right, protected under the equality clause of the Constitution, and the "pursuit of happiness" thereunder, if both parties thereto are not equally subject to the municipal law?

The contractual relation or status of marriage is one of the most important and sacred, provided for and protected by the "social compact." If the operation of a "lawful business" is included among the inalienable rights of life, liberty, and the pursuit of happiness, is not the natural right of marriage to be so included? If so, it is secure against the capricious and unreasonable interference of municipal law, that would bind one of the contracting parties and, without just cause or delictum on his part, free the other. So it cannot with reason be said that the liberty and equality guaranteed by the Constitution to all men—"liberty regulated by law and the social compact"—is accorded under the statute here in question to the class of individuals composed of the husbands of the favored wives, to say nothing of other husbands and wives who are not so favored. The practical effect of this statute is to grant, under the social compact, an unreasonable and capricious extension of liberty or privilege to those individuals coming within the classification of wives who may at will repudiate existing and binding marriage obligations (perhaps to contract marriage with others), and to deny such liberty to another class of individuals, their husbands, as well as to any husband who desires to be freed from the status of marriage without fault on the part of the wife.

It will not be held, under the Constitution, that there can exist a statutory ground for divorce available only to the wife, the legal effect of which is, that any married woman, a bona fide resident of the state, may be divorced at will by living apart from her husband—away from his bed and board—for five years next preceding the filing of her bill for separation, and refusing to accept or receive from him support within that period, notwithstanding he may be able and willing to discharge his every lawful and moral obligation to the wife. The Constitution will not permit such an arbitrary and capricious exercise of municipal power by the Legislature.

It is true that at an earlier period of this state the Legislature exercised the right to dissolve the relation of marriage by either special or general enactment, and under circumstances which provided scant opportunity for a hearing upon the relative rights, and failures of duty, of the parties. In this way "hard cases" of insanity, incompatibility, etc., were dealt with by the Legislature under former Constitutions. However, the tendency has been to limit and, later, to deny this legislative power over questions without

the sphere of legitimate legislation, and properly belonging within the province of judicial determination. In Jones v. Jones, 95 Ala. 443, 448, 11 South. 11, 12 (18 L. R. A. 95) Mr. Justice Walker observed, of the Constitution of 1875, that:

"It contains no express provision on the subject of divorce. It, however, prescribed general restraints upon the power of the Legislature which were not found in the former Constitutions. The question to be considered is whether the omission of a special provision against granting divorces except in judicial proceedings left the Legislature free to exercise an original plenary power over the subject, and to grant divorces by enactments for special cases. It is clear that such special legislation for individual cases is not in harmony with the policy of preserving an equality of all persons before the law, without favors to some and discriminations against others under similar circumstances."

In the Constitution of 1901 (section 104), the right to grant divorce by legislative enactment is denied. Subsection 1, and the other provisions guaranteeing equality before the law, long prevailing in our organic law, are retained.

I concur in the view announced by Mr. Justice SOMERVILLE, that the act of September 10, 1915 (No. 413, Gen. Acts, 370), was not remedial, and that there was an essential difference between it and the act construed in State ex rel. Brassell v. Teasley, Judge supra, as pointed out by the learned justice.